USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-7-2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

E. JEAN CARROLL,

                         Plaintiff,

          -against-                                    20-cv-7311 (LAK)

DONALD J. TRUMP, in his personal capacity,

                         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM
## AND CERTAIN PURPORTED AFFIRMATIVE DEFENSES

          Appearances:

                         Roberta Kaplan
                         Joshua Matz
                         Shawn Crowley
                         Matthew Craig
                         Trevor Morrison
                         Michael Ferrara
                         KAPLAN HECKER & FINK LLP

                         *Attorneys for Plaintiff*

                         Alina Habba
                         Michael T. Madaio
                         HABBA MADAIO & ASSOCIATES LLP

                         *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

   This is a defamation case against Donald Trump brought by writer E. Jean Carroll for certain statements Mr. Trump made in 2019, while he was President, in response to Ms. Carroll's public accusation that he sexually assaulted ("raped") her in the mid 1990s. In a closely related second case ("*Carroll II*"), Ms. Carroll brought a defamation claim for Mr. Trump's comparable 2022 statement as well as a sexual battery claim pursuant to the Adult Survivors Act ("ASA"). The battery claim became permissible as a result of the ASA, a new law enacted by New York in 2022, which created a one-year period within which persons who were subjected as adults to conduct that would have constituted a sex offense under the New York Penal Law could sue their alleged assaulters for damages even if their civil claims otherwise would have been expired.

   *Carroll II* was tried in this Court in April and May 2023. Ms. Carroll testified that Mr. Trump assaulted her in the dressing room of a New York department store in what most likely was the spring of 1996 by, among other things, forcibly penetrating her vagina with his fingers and with his penis. The essence of her account was corroborated by two "outcry" witnesses in whom she had confided shortly after the attack and six other fact witnesses. Mr. Trump relied exclusively on attempting to discredit Ms. Carroll's proof and on portions of his deposition testimony that came in on Ms. Carroll's case. He did not testify in person, attend the trial, or present any defense evidence.

   The jury's unanimous verdict was almost entirely in favor of Ms. Carroll. It found that Mr. Trump "sexually abused" Ms. Carroll, which is defined in the New York Penal Law as sexual contact by forcible compulsion and is a felony punishable by a term of imprisonment and registration as a sex offender. It determined also that Mr. Trump defamed Ms. Carroll in his 2022 statement. It awarded Ms. Carroll $2.02 million in compensatory and punitive damages on her sexual

battery claim and $2.98 million in compensatory and punitive damages on her defamation claim.

The only issue on which the jury did not find in Ms. Carroll's favor was whether she proved that Mr. Trump "raped" her within the narrow, technical meaning of that term in the New York Penal Law. The jury in *Carroll II* was instructed that it could find that Mr. Trump "raped" Ms. Carroll only if it found that he forcibly penetrated Ms. Carroll's vagina *with his penis*. It could not find that he "raped" her if it determined that Mr. Trump forcibly penetrated Ms. Carroll's private sexual parts with his fingers – which commonly is considered "rape" in other contexts – because the New York Penal Law definition of rape is limited to penile penetration. As the Court explained in its recent decision denying Mr. Trump's motion for a new trial on damages and other relief in *Carroll II*, based on all of the evidence at trial and the jury's verdict as a whole, the jury's finding that Mr. Trump "sexually abused" Ms. Carroll implicitly determined that he forcibly penetrated her digitally – in other words, that Mr. Trump in fact did "rape" Ms. Carroll as that term commonly is used and understood in contexts outside of the New York Penal Law.

The day after the jury's verdict, Ms. Carroll and her counsel gave interviews with the media where they discussed the trial and Ms. Carroll's reaction to the verdict. On June 27, 2023, in his answer to Ms. Carroll's amended complaint in this action, *Carroll I*,[1] Mr. Trump asserted for the

---

[1]       "The amended complaint made three main sets of changes. First, it added allegations based upon the jury's verdict in [*Carroll II*], including substitution of the phrase 'sexual assault' (or derivatives of that phrase) for the word 'rape' (or derivatives of that word) wherever that word (or its derivatives) appeared in the original complaint. Second, it set forth alleged facts concerning Mr. Trump's recent statements following the *Carroll II* verdict in which he again claimed that he does not know Ms. Carroll and that no such incident occurred between them. Third, it added allegations drawn from Mr. Trump's deposition in this case that allegedly demonstrate his personal motive in defaming Ms. Carroll. Importantly, as the Court noted in its decision denying Mr. Trump's motion for summary judgment [in this case], '[t]he amended complaint did not add any new claims or otherwise change the focus of [Ms. Carroll's] original complaint.' *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL

first time a defamation counterclaim against Ms. Carroll. He alleged that Ms. Carroll, in an interview with CNN following the *Carroll II* verdict, "disregarded the jury's finding that [Mr. Trump] did not rape her" by (1) stating that when she heard that the jury's response was "no" to the question of whether she proved that Mr. Trump raped her, she responded "oh yes he did, oh yes he did", and (2) stating that at the conclusion of the trial, she said to Mr. Trump's counsel "he [(Mr. Trump)] did it and you know it."[2]

The matter now is before the Court on Ms. Carroll's motion to dismiss Mr. Trump's counterclaim and to strike certain affirmative defenses in his answer. For the reasons stated below, Ms. Carroll's motion to dismiss the counterclaim is granted. Her motion to strike certain affirmative defenses is granted in part and denied in part.

### *Facts*

*The "Rape" Question in Carroll II*

Ms. Carroll's sexual battery claim in *Carroll II* involved three independent and alternative theories of liability: rape, sexual abuse, and forcible touching. Each theory corresponded to a definition of a sex crime by the same name in the New York Penal Law. It was necessary to define these acts in the precise terms of the New York Penal Law because the ASA requires that the alleged conduct for which a person is able to bring a sexual battery claim within the temporary claim revival period "would constitute a sexual offense as defined in article one hundred thirty of the penal

---

4744176, at *1 (S.D.N.Y. July 25, 2023) (quoting *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 4393067 at *2 n.6 (S.D.N.Y. July 5, 2023)).

2    Dkt 171 (Def. Answer to Pl. Amend. Compl.) at 25-26 ¶¶ 5-7.

law."[3] The special verdict form provided to the jury accordingly consisted of three liability questions relating to Ms. Carroll's sexual battery claim: whether Ms. Carroll proved by a preponderance of the evidence that (1) "Mr. Trump raped Ms. Carroll?", (2) "Mr. Trump sexually abused Ms. Carroll?", and (3) "Mr. Trump forcibly touched Ms. Carroll?".[4]

The Court instructed the jury that the "first set of questions in the verdict form has to do with whether or not Ms. Carroll has established that Mr. Trump's conduct, if any, came within any of th[e] criminal law definitions," and proceeded to instruct the jury on each such definition.[5] With respect to the first question on the verdict form, whether Ms. Carroll proved that Mr. Trump raped her, the Court instructed the jury in accordance with the New York Penal Law's definition of

---

[3]    N.Y. CPLR § 214-j ("Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of *conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law* committed against such person who was eighteen years of age or older . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, is hereby revived . . . .") (emphasis added).

[4]    *Carroll II*, Doc. No. 22-cv-10016, Dkt 174 (Verdict) at 1.

       "Pursuant to Federal Rule of Civil Procedure 49, which governs jury verdict forms and questions, '[t]he court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact.' A special verdict stands in contrast to a general verdict form, which typically asks jurors to answer only the ultimate questions of liability and the damages amounts, if any. The Court here used a special verdict form that was substantially similar to the parties' proposed forms, consisting of factual questions going to liability and damages, organized by the two claims [(battery and defamation)]." *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 4612082, at *12 (S.D.N.Y. July 19, 2023).

[5]    *Carroll II*, Doc. No. 22cv10016, Dkt 201 (Trial Tr.) at 1416:6-9.

rape, as relevant here, that:

> "In order to establish that Mr. Trump raped her, Ms. Carroll must prove each of two elements by a preponderance of the evidence.
>
> "The first element is that Mr. Trump engaged in *sexual intercourse* with her.
>
> "The second element is that Mr. Trump did so without Ms. Carroll's consent by the use of forcible compulsion. . . .
>
> "'Sexual intercourse' means any penetration, however slight, *of the penis* into the vaginal opening. In other words, any penetration of the penis into the vaginal opening, regardless of the distance of penetration, constitutes an act of sexual intercourse. Sexual intercourse does not necessarily require erection of the penis, emission, or an orgasm."[6]

The instructions with respect to the rape question thus made clear that if the jury found that Mr. Trump forcibly penetrated Ms. Carroll's vagina with his fingers, but not also with his penis, it was obliged to answer "no" to the rape question. However, if it found that Mr. Trump forcibly penetrated Ms. Carroll digitally, it was obliged to answer "yes" to the sexual abuse question, as the New York Penal Law definition of "sexual abuse" encompasses such conduct. For the reasons stated in the Court's recent decision denying Mr. Trump's motion for a new trial in *Carroll II*:

> "The jury's finding of sexual abuse therefore necessarily implies that it found that Mr. Trump forcibly penetrated her vagina. And since the jury's answer to [the rape question] demonstrates that it was unconvinced that there was penile

---

[6]     *Id.* at 1416:18-1417:6 (emphasis added).

7

penetration, the only remaining conclusion is that it found that Mr. Trump forcibly penetrated her vagina with his fingers – *in other words, that he 'raped' her in the sense of that term broader than the New York Penal Law definition*."[7]

The jury's answer of "no" to the question of whether Ms. Carroll proved that Mr. Trump "raped" her therefore established *only* that the jury was unconvinced that he penetrated her *with his penis*.

*Ms. Carroll's Statements After the Jury's Verdict in Carroll II*

On May 10, 2023, the day after the jury's verdict in *Carroll II*, Ms. Carroll and her counsel gave interviews with the media, including on the television program *CNN This Morning*. During that interview, Ms. Carroll made the following statements:

"[Reporter]: What about when that first finding was found? This jury found that Trump did not rape you. What about that moment?

[Ms. Carroll]: Robbie [(Ms. Carroll's counsel)] can explain the legal?

[Reporter]: Sure. And I want you to, but I just wonder, E. Jean, what went through your head when you heard that?

[Ms. Carroll]: Well, I just immediately say in my own head, *oh, yes, he did -- oh, yes, he did*. See, that's my response."

. . .

---

[7] *Carroll*, 2023 WL 4612082, at *20 (emphasis added).

In any event, the Court alternatively found, in accordance with Rule 49, that Mr. Trump did forcibly digitally penetrate Ms. Carroll's vagina. *Id.* at *19 n.70 ("As the jury's response to Question 2 [(the sexual abuse question)] was an implicit finding that Mr. Trump forcibly digitally penetrated Ms. Carroll's vagina, no explicit independent finding by the Court is necessary. Nevertheless, the Court alternatively finds that he did so.").

"[Reporter]: There in the courtroom was an encounter and exchange between you and the President's lawyer, Joe Tacopina. He came up, you shook hands, I believe. What did he say?

[Ms. Carroll]: Well, Joe Tacopina is very likeable. He's sort of like an 18th century strutting peacock. And he's people like him [*sic*]. So, when he sticks out his hand to — first, he congratulated Robbie. And then, he was congratulating people on the team. And as I put my hand forward, I said, *he did it and you know it*. Then we shook hands, and I passed on."[8]

*Mr. Trump's Counterclaim and Affirmative Defenses*

Mr. Trump alleges in his counterclaim that Ms. Carroll's statements during the CNN interview on May 10, 2023 "repeated falsehoods and defamatory statements" that caused "significant harm to [Mr. Trump's] reputation."[9] He alleges that her statement "oh yes he did, oh yes he did" in response to the reporter's question about her reaction "disregarded the jury's finding that [Mr. Trump] did not rape her" and that her statement to Mr. Trump's counsel that "he did it and you know it" "again reaffirm[ed] her claim that [Mr. Trump] raped her."[10] He contends that:

"[Ms. Carroll] made these statements knowing each of them were false or with reckless disregard for their truth or falsity.

---

[8]      Dkt 176-3, Ex. C to Decl. of Roberta A. Kaplan, Tr. of CNN Interview, at 11-13 (emphasis added).

[9]      Dkt 171 (Def. Answer to Pl. Amend. Compl.) at 26 ¶ 12.

[10]      *Id.* at 25 ¶ 5, 26 ¶ 7.

9

. . .

> [Ms. Carroll] made these false statements with actual malice and ill will with an intent to significantly and spitefully harm and attack [Mr. Trump's] reputation, as these false statements were clearly contrary to the jury verdict in *Carroll II* whereby [Mr. Trump] was found not liable for rape by the jury.
>
> [Ms. Carroll's] actions of wantonly and falsely accusing [Mr. Trump] on multiple occasions of committing rape constitute defamation *per se*, as [Ms. Carroll] accused [Mr. Trump] of rape, which clearly was not committed, according to the jury verdict in *Carroll II*."[11]

He accordingly seeks compensatory and punitive damages, an order requiring Ms. Carroll to retract her defamatory statements, and other relief.

Mr. Trump raises also in his answer certain affirmative defenses that Ms. Carroll argues should be stricken "because the Court considered and rejected each of these defenses in denying [Mr.] Trump's motion for summary judgment."[12]  They are discussed below.

## *Discussion*

### *Legal Standard*

The standards governing a motion to dismiss are well established. As the Second Circuit has explained:

---

[11]    *Id.* at 26 ¶¶ 8, 10, 11.

[12]    Dkt 175 (Pl. Mem.) at 27-28.

"'[A] complaint [or counterclaim] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007))."[13]

Although the Court must accept as true all factual allegations, it "should not accept as true allegations that amount to mere 'legal conclusions.'"[14] Furthermore, a complaint or counterclaim "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."[15] "'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding [a] motion to dismiss, without converting the proceeding to one for summary judgment."[16]

With respect to Ms. Carroll's motion to strike certain of Mr. Trump's affirmative defenses, Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading

---

[13]    *King v. City of New York*, No. 22-231, 2023 WL 2398679, at *1 (2d Cir. Mar. 8, 2023) (first alteration in original).

[14]    *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15]    *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

[16]    *Id.* (second alteration in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991), *cert. denied*, 503 U.S. 960 (1992)).

11

an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[17] The
Second Circuit has stated that:

> "We conclude that the plausibility standard of *Twombly* applies to
> determining the sufficiency of all pleadings, including the pleading of an affirmative
> defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying
> the plausibility standard to any pleading is a 'context-specific' task."[18]

It has set forth also certain considerations in relation to a motion to strike an affirmative defense
including, as relevant here, that "an affirmative defense is improper and should be stricken if it is a
legally insufficient basis for precluding a plaintiff from prevailing on its claims."[19]

*Mr. Trump's Defamation Claim Fails With Respect To Falsity*

Ms. Carroll argues that Mr. Trump has failed to state a legally sufficient claim for
defamation both because her statements were at least "substantially true" and because Mr. Trump
has not adequately pled actual malice. In view of the following analysis of the falsity-substantial
truth issue, there is no need to address the sufficiency of Mr. Trump's actual malice allegations.

In order to make out a defamation case, a public figure plaintiff or counterclaimant
such as Mr. Trump "must show that the statements [the plaintiff] complains of were (1) of and
concerning [the plaintiff], (2) likely to be understood as defamatory by the ordinary person, (3) false,

---

[17]    Fed. R. Civ. P. 12(f).

[18]    *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) (citation omitted).

[19]    *Id.* at 98.

and (4) published with actual malice, that is, either knowledge of falsity or reckless disregard of the truth."[20]  "[W]hen falsity is an element of a state defamation claim, federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false. . . . In particular, several courts of appeals have affirmed dismissals of defamation claims because the material in the complaint cannot be reasonably understood except as being true or substantially true."[21]  "'[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced.'"[22]  To determine whether a statement is substantially true, "[c]ourts typically compare the complained of language with the alleged truth to determine whether the truth would have a different effect on the

---

[20]  *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001).

[21]  *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017). *See also, e.g., Nunes v. NBCUniversal Media, LLC*, No. 22-cv-1633 (PKC), 2022 WL 17251981, at *4 (S.D.N.Y. Nov. 28, 2022) ("Whether a statement is substantially true is an issue of law properly decided on a motion to dismiss, provided that the Court limits its consideration to materials appropriately considered on such a motion."); *Fairstein v. Netflix, Inc.*, 553 F. Supp. 3d 48, 65 (S.D.N.Y. 2021) ("The issue of whether a statement is substantially true may present an issue of law properly decided on a motion to dismiss, provided that the Court limits its consideration to materials appropriately considered on such a motion."); *Marom v. Pierot*, No. 18-cv-12094 (VB) (JCM), 2020 WL 6572509, at *4 (S.D.N.Y. Aug. 30, 2020), *report and recommendation adopted*, No. 18 CV 12094 (VB), 2020 WL 6565199 (S.D.N.Y. Nov. 9, 2020) ("'Because falsity is an element of New York's defamation tort, and 'falsity' refers to material not substantially true, the complaint...must plead facts that, if proven, would establish that the defendant's statements were not substantially true.' . . . Consistent with this requirement, a plaintiff asserting a claim of defamation must not only identify the allegedly defamatory statement, 'but also the respect in which it was allegedly false.') (first ellipsis in original) (citations omitted); *Verragio, Ltd. v. AE Jewelers, Inc.*, No. 15-cv-6500 (CM), 2017 WL 4125368, at *8 (S.D.N.Y. Aug. 23, 2017) (dismissing counterclaim for defamation on ground of substantial truth).

[22]  *Tannerite Sports, LLC*, 864 F.3d at 247 (quoting *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (1st Dept. 2015)).

mind of the average reader."[23] "When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done."[24] But Mr. Trump has not plausibly alleged that Ms. Carroll's statements during the CNN interview were not at least substantially true.

The only basis for Mr. Trump's assertion of falsity is the fact that the jury in *Carroll II* was not persuaded that Mr. Trump had "raped" her within the meaning of the New York Penal Law – in other words, that it did not find that he penetrated her vagina with his penis.[25] And that indeed was its decision. But that is insufficient to state a claim for defamation here for two reasons. The argument presupposes (1) that the jury's answer to the Penal Law "rape" question in *Carroll II* would establish falsity and, if it did, (2) that it is binding on Ms. Carroll in this case. Both of those presuppositions are incorrect. Indeed, the jury's verdict in *Carroll II* establishes, as against Mr. Trump, the fact that Mr. Trump "raped" her, albeit digitally rather than with his penis. Thus, it establishes against him the substantial truth of Ms. Carroll's "rape" accusations. In any case, the *Carroll II* jury's Penal Law rape finding does not even establish, as against Ms. Carroll, Mr. Trump's contention that he did not penetrate her with his penis, *i.e.*, that he did not rape her within the meaning of the Penal Law. The Court begins with the latter point.

---

[23]
    *Franklin.*, 135 A.D.3d at 94.

[24]
    *Cafferty v. S. Tier Pub. Co.*, 226 N.Y. 87, 93 (1919).

[25]
    *See, e.g.*, Dkt 181 (Def. Opp. Mem.) at 5-6 ("Here, Plaintiff's statement was demonstrably false. Plaintiff does not dispute, nor can she, that the jury in *Carroll II* determined that Defendant did not rape her. . . . In view of the jury's finding, there is simply no argument that Plaintiff's statement was 'substantially true' as a matter of law.").

*The Jury's Penal Law Rape Finding in Carroll II Is Not Conclusive in this Case*

In order for Ms. Carroll to have defamed Mr. Trump by asserting that he "raped" her as that term is defined in the New York Penal Law (even assuming that her post-verdict statements reasonably could be construed as meaning what Mr. Trump claims it meant),[26] Mr. Trump was required to plead sufficient facts to allege that her statements were false or at least not substantially true. But, as noted, the only basis for Mr. Trump's claim of falsity is the jury's answer to the Penal Law rape question in *Carroll II*. Thus, he invokes the doctrine of issue preclusion, also referred to as collateral estoppel, to contend that the jury's verdict on the Penal Law rape question precludes Ms. Carroll from contending that Mr. Trump in fact penetrated her with his penis.[27]

The parties agree that "a party is collaterally estopped from relitigating an issue if a four-part test is met: '(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair

---

[26]      The parties dispute whether Ms. Carroll was referring to "rape" within the meaning of the New York Penal Law or "rape" as that term is understood more broadly in the allegedly defamatory statements. Drawing all reasonable inferences in favor of Mr. Trump, as the Court must on this motion to dismiss, the Court assumes without now deciding that Ms. Carroll was referring to rape within the meaning of the New York Penal Law in the two allegedly defamatory statements.

[27]      *See also* Dkt 194 (Def. Mem. Issue Preclusion) at 4-6.

Although Mr. Trump has appealed the judgment in *Carroll II*, "it is well established that the fact that . . . an appeal from the judgment has . . . been taken does not divest the judgment of finality for the purposes of collateral estoppel." *Samhammer v. Home Mut. Ins. Co. of Binghamton*, 120 A.D.2d 59, 64 (3d Dept. 1986). *See also Anonymous v. Dobbs Ferry Union Free Sch. Dist.*, 19 A.D.3d 522, 522 (2d Dept. 2005) ("The rule in New York is that the 'pendency of an appeal does not prevent the use of the challenged judgment as the basis of' collateral estoppel.") (citation omitted). It is well established also – and neither party contends otherwise – that the preclusive effect of the *Carroll II* judgment is governed by New York law, as *Carroll II* was a diversity case. *E.g., Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001).

opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid

and final judgment on the merits.'"[28]  Mr. Trump contends, however, that:

> "[T]he issue of falsity has been conclusively established in Defendant's favor
> with respect to the claim for defamation asserted in his counterclaim. . . . First, there
> is little question that the issue of whether Defendant raped Plaintiff has always been
> a central question in both *Carroll I* and *Carroll II*. . . . Second, the issue was actually
> determined in *Carroll II* when the jury expressly found that Plaintiff failed to
> demonstrate by a preponderance of the evidence that she was raped by Defendant.
> . . . Third, the parties had a full and fair opportunity to litigate the issue throughout
> *Carroll II*'s proceedings and trial, and despite Plaintiff's extensive testimony
> advancing her claim that she was raped, the jury rejected her account and returned a
> verdict in Defendant's favor. Finally, it is readily apparent that the issue of whether
> Plaintiff was raped was a material aspect to the jury's finding."[29]

But Mr. Trump entirely ignores the fourth element of the collateral estoppel test, whether the issue

was "'necessary to support a valid and final judgment on the merits.'"[30]

---

[28]

> *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (citation omitted). *See also* Dkt
> 194 (Def. Mem. Issue Preclusion) at 1 ("Under New York law, collateral estoppel applies
> when 'the issue in the second action [(1)] is identical to an issue which was raised, [(2)]
> necessarily decided and material in the first action, and [(3)] the plaintiff had a full and fair
> opportunity to litigate the issue in the earlier action.'") (quoting *Sullivan v. Gagnier*, 225
> F.3d 161, 166 (2d Cir. 2000)).

[29]

> Dkt 194 (Def. Mem. Issue Preclusion) at 4.

[30]

> *Boguslavsky*, 159 F.3d at 720 (citation omitted). *See also, e.g., PenneCom B.V. v. Merrill
> Lynch & Co.*, 372 F.3d 488, 491 (2d Cir. 2004) ("[A] party is estopped from relitigating an
> issue *when that issue was necessary to the resolution of the prior action*, and the party

As noted above and in a prior decision in this case, the issue of whether Mr. Trump "raped" Ms. Carroll within the meaning of the Penal Law was in this case for one and only one reason. As the parties agreed, Ms. Carroll was entitled under the ASA to sue Mr. Trump for sexual battery in 2022, despite the years that had passed since the parties' encounter, only if she could establish that Mr. Trump's conduct met *any one* of three alternative definitions of sex crimes set out in the Penal Law – rape, sexual abuse or forcible touching. The jury was required to answer "yes" to only one of these three theories in order to award damages. It found that Mr. Trump had abused Ms. Carroll sexually, thus satisfying the requirement of the ASA. The issues of whether he "raped" or "forcibly touched" her were entirely extraneous given the sexual abuse finding. Indeed, the verdict form could have omitted the rape question entirely, and the judgment in *Carroll II* would have been unaffected.

The *Carroll II* jury's answer to the Penal Law "rape" question therefore was unnecessary and immaterial. Accordingly, it is not binding on Ms. Carroll in this case. In consequence, there is no merit to Mr. Trump's argument that the jury's finding on the Penal Law "rape" question established that Ms. Carroll's statements were false even if her statements reasonably could be construed as referring to "rape" in that specialized Penal Law sense, a subject on which this Court now expresses no view.

*In Any Case, Ms. Carroll's Statements Were Substantially True*

Unlike the jury's finding on the Penal Law "rape" question, its finding on the sexual

_____

against whom estoppel is invoked had a full and fair opportunity to contest that issue in the previous litigation.") (emphasis added) (collecting New York cases).

abuse question – and specifically its implicit determination that Mr. Trump digitally raped her – is conclusive with respect to this case. As a result, Ms. Carroll's statements are "substantially true."

The finding that Mr. Trump digitally raped Ms. Carroll is conclusive because it was necessary to support the judgment in *Carroll II*. As recounted above and in the Court's recent new trial decision in *Carroll II*, "the only remaining conclusion" based on all of the evidence at trial was that the jury implicitly found that Mr. Trump forcibly penetrated Ms. Carroll's vagina with his fingers.[31] "[T]here was ample, arguably overwhelming evidence, that Mr. Trump forcibly digitally penetrated Ms. Carroll, thus fully supporting the jury's sexual abuse finding."[32] The finding of forcible digital penetration "is fully supported by Ms. Carroll's repeated and clear testimony on the digital penetration (more than the penile penetration), Dr. Lebowitz [(Ms. Carroll's damages expert for her battery claim)] specifically mentioning Ms. Carroll squirming in response to an intrusive memory of Mr. Trump's fingers in her vagina, and the evidence at trial taken as a whole. It also is bolstered by the amount of the jury's verdict."[33] Indeed, the finding of digital rape is essential to support the size of the jury's damages award on the battery claim – over $2 million. It accordingly is the "truth," as relevant here, that Mr. Trump digitally raped Ms. Carroll.

As stated above, a statement is substantially true if it "would not have a different

---

[31]   *Carroll*, 2023 WL 4612082, at *20.

       Moreover, as noted above, the Court in any event determined, in the alternative and pursuant to Rule 49, that Mr. Trump digitally raped Ms. Carroll.

[32]   *Id.*

[33]   *Id.*

effect on the mind of the reader from that which the pleaded truth would have produced."[34] Here, the "pleaded truth" would have been that Mr. Trump forcibly penetrated Ms. Carroll's vagina with his fingers. The difference between Ms. Carroll's allegedly defamatory statements – that Mr. Trump "raped" her as defined in the New York Penal Law – and the "truth" – that Mr. Trump forcibly digitally penetrated Ms. Carroll – is minimal. Both are felonious sex crimes. If Ms. Carroll had stated that Mr. Trump "raped" her by forcibly digitally penetrating her vagina instead of referring also (allegedly) to forcible penile penetration, there would have been no different effect on the mind of an average listener. Indeed, both acts constitute "rape" in "common modern parlance, its definition in some dictionaries, in some federal and state criminal statutes, and elsewhere."[35] Given that the anatomical difference between the alleged falsehood and the truth is a "fine and shaded distinction[] [that] must be drawn" in order "to sustain a charge of libel" based on Ms. Carroll's interview statements, "no legal harm has been done."[36]

Mr. Trump accordingly fails to state a claim for defamation because (1) he fails plausibly to allege that Ms. Carroll's statements were not true, and (2) in the alternative, Ms. Carroll's allegedly defamatory statements were substantially true as a matter of law.

*Mr. Trump's Affirmative Defenses*

Ms. Carroll argues that the Court should strike Mr. Trump's first, third, fifth, twelfth,

---

[34]

 *Tannerite Sports, LLC*, 864 F.3d at 247 (quoting *Franklin*, 135 A.D.3d at 94).

[35]

 *Carroll*, 2023 WL 4612082, at *2 & n. 2-4.

[36]

 *Cafferty*, 226 N.Y. at 93.

and fifteenth affirmative defenses because the Court "considered and rejected each of these defenses in denying [Mr.] Trump's motion for summary judgment."[37]  She relies on the law-of-the-case doctrine, which provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[38]  Her argument is persuasive with respect to some, but not all, of Mr. Trump's purported affirmative defenses.

   Mr. Trump's fifth and fifteenth affirmative defenses are that "[s]ome or all of the statements at issue are matters of opinion that are not capable of being proven true or false" and that "[p]laintiff has not sufficiently pled defamation or defamation *per se*," respectively.[39]  In its decision denying Mr. Trump's motion for summary judgment, the Court determined that "Mr. Trump's statements were factual assertions rather than expressions of opinion" and that Ms. Carroll adequately alleged that his 2019 statements are defamatory *per se*.[40]  Nothing in Ms. Carroll's amended complaint – which, as the Court has explained, "did not add any new claims or otherwise change the focus of her original complaint" – would change the Court's prior analysis or decision with respect to those defenses.[41]  However, as the Court noted in its summary judgment decision:

   "Neither party addresses specifically Mr. Trump's June 24, 2019 statement, in which he said only: 'I'll say it with great respect: Number one, she's not my type.

---

[37] Dkt 175 (Pl. Mem.) at 27-28.

[38] *Pepper v. United States*, 562 U.S. 476, 506 (2011) (citation omitted).

[39] Dkt 171 (Def. Answer to Pl. Amend. Compl.) at 21, ¶ 5, 22 ¶ 15.

[40] *Carroll*, 2023 WL 4393067, at *14-17.

[41] *Id.* at *2 n.6.

Number two, it never happened. It never happened, OK?'. In her complaint, Ms. Carroll alleges that all three June 2019 statements were defamatory. However, as stated above, the crux of Ms. Carroll's defamation claim lies in Mr. Trump's statements that Ms. Carroll lied for financial and/or personal gain. Indeed, Mr. Trump appears to ground his argument that 'the majority' of his statements are nonactionable opinion on the assumption that Ms. Carroll does not allege his 'general repudiation of Plaintiff's allegations' in itself was defamatory. . . . As the parties have not adequately addressed this point, the Court does not now decide it."[42]

Given that the Court has not previously decided the application, if any, of Mr. Trump's fifth and fifteenth affirmative defenses Mr. Trump's June 24, 2019 statement, it does not strike those defenses to the extent they might concern only that statement. Those two affirmative defenses, however, are stricken insofar as they apply to anything else.

Mr. Trump's twelfth affirmative defense is that Ms. Carroll "is not entitled to punitive damages as a matter of law."[43] But the Court rejected that claim when it determined, in denying Mr. Trump's motion for summary judgment, that "Mr. Trump has failed to establish that there is not a genuine issue of material fact as to whether the prerequisites to a punitive damages award in this case have been satisfied."[44] Mr. Trump's argument that the Court "did not find that there is 'no question of fact' which could potentially lead to Defendant successfully raising this defense at trial" is

---

[42]     *Id.* at *17, n. 85.

[43]     Dkt 171 (Def. Answer to Pl. Amend. Compl.) at 22 ¶ 12.

[44]     *Carroll*, 2023 WL 4393067, at *20.

irrelevant because Mr. Trump's stated defense is that she is not entitled to punitive damages *as a matter of law* – in other words, that she would not be entitled to punitive damages irrespective of the evidence at trial.[45]

He contends also that the amended complaint "adds an entirely new theory of punitive damages, relating to statements Defendant made on May 10, 2023, which Defendant has not yet had an opportunity to challenge."[46] The amended complaint added allegations with respect to Mr. Trump's remarks concerning Ms. Carroll during the CNN Town Hall event on May 10, 2023 as "subsequent statements of the defendant" "which may be considered to establish that Mr. Trump made the 2019 statements that always have been the subject of this action with the deliberate intent to injure or out of hatred, ill will, or spite ('common law malice') in order for Ms. Carroll to obtain punitive damages" with respect to the 2019 statements.[47] She asserts no stand-alone claim based on the post-*Carroll II* verdict statements. The Court's decision with respect to Mr. Trump's defense therefore is unaffected by the inclusion of his subsequent statements in Ms. Carroll's amended complaint. The Court accordingly strikes the twelfth affirmative defense on the grounds that it already decided that this defense is legally insufficient and that nothing in the amended complaint warrants any different result.[48]

---

[45]     Dkt 181 (Def. Opp. Mem.) at 24.

[46]     *Id.*

[47]     *Carroll v. Trump*, 2023 WL 4744176, at *2.

[48]     *See, e.g., Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-cv-5075 (LJL), 2020 WL 3472597, at *14 (S.D.N.Y. June 25, 2020) ("The Court strikes the First Affirmative Defense to the extent that it seeks to relitigate the legal sufficiency of claims

Mr. Trump's first defense is absolute presidential immunity. But the Court previously determined that Mr. Trump waived that defense by failing to raise it in the first three years of litigating this case and, in any case, that it would have been insufficient as a defense.[49] Mr. Trump rejoins that "although this Court has held that the presidential immunity defense was waived when it was not raised in Defendant's initial [a]nswer . . . his defense has now been properly and timely raised since it was asserted in connection with Defendant's [a]mended [a]nswer."[50] He misunderstands, however, the relevant standard. "A defendant who is responding to an amended complaint cannot amend his answer as of right without any regard to the amendments taken by his adversary."[51] There is nothing new in the amended complaint that would make Mr. Trump's presidential immunity defense any more viable or persuasive now than it would have been before. The fact that he has raised it now in an answer does not (1) undo the fact that he waived the defense by failing to raise it in the first three years of litigating this case or (2) change the Court's decision that his purported defense would have been insufficient in any case. The opportunity to answer an amended complaint is not a free pass to correct past wrongs without any justification or basis for doing so. The Court accordingly strikes Mr. Trump's first affirmative defense.

Mr. Trump's third affirmative defense is that "[t]he alleged defamatory statements are privileged or protected by one or more immunities, including, but not limited to, under the

---

already decided.").

[49]    *Carroll*, 2023 WL 4393067, at *8-9.

[50]    Dkt 181 (Def. Opp. Mem.) at 25.

[51]    *Pereira v. Cogan*, No. 00-cv-619 (RWS), 2002 WL 1822928, at *4 (S.D.N.Y. Aug. 7, 2002).

23

Constitution of the United States."[52]  Ms. Carroll does not adequately explain her request to strike this defense. To the extent Mr. Trump claims that his third defense "assert[s] the defense of presidential immunity,"[53] the Court strikes it for the same reasons stated above for striking Mr. Trump's first defense asserting absolute presidential immunity. To the extent, however, that it concerns a different defense or issue not previously decided, the Court does not now decide to strike the defense in those other respects, if any, as the parties have not adequately addressed it.

---

[52]

    Dkt 171 (Def. Answer to Pl. Amend. Compl.) at 21 ¶ 3.

[53]

    Dkt 181 (Def. Opp. Mem.) at 25.

    Although Mr. Trump asserts in his opposition here that this defense relates to presidential immunity, he made no such argument with respect to that defense – which also was included in his original answer – when he moved for summary judgment on the basis of absolute presidential immunity.  In any event, to the extent he now claims it is related to presidential immunity, it is stricken for the same reasons explained above.

24

*Conclusion*

For the foregoing reasons, Ms. Carroll's motion to dismiss Mr. Trump's counterclaim (Dkt 174) is granted. Her motion to strike Mr. Trump's affirmative defenses (Dkt 174) is granted in part and denied in part as follows:

(1) Mr. Trump's first and twelfth affirmative defenses are stricken in their entirety.

(2) Mr. Trump's fifth and fifteenth affirmative defenses are stricken except to the extent, if any, that they relate to Mr. Trump's June 24, 2019 statement.

(3) Mr. Trump's third affirmative defense is stricken to the extent it asserts an absolute presidential immunity defense, and is not stricken in any other respect, if there is any. It is denied in its remaining respects.

SO ORDERED.

Dated:      August 7, 2023

_____
Lewis A. Kaplan
United States District Judge