# 23-1045
# 23-1146

## United States Court of Appeals
## For the Second Circuit

E. JEAN CARROLL,

*Plaintiff/Appellee,*

-against-

DONALD J. TRUMP,

*Defendant/Appellant.*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT-APPELLANT'S EMERGENCY MOTION FOR A STAY PENDING APPEAL**

MICHAEL T MADAIO, ESQ.
HABBA MADAIO & ASSOCIATES, LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Floors
New York. New York 10120
mmadaio@habbalaw.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION AND SUMMARY ....................................................1

STATEMENT OF FACTS ....................................................................2

JURISDICTION..................................................................................4

LEGAL ARGUMENT..........................................................................5

   I.    The District Court Has Been Divested of Jurisdiction Pending Appeal .........5

   II.   The Stay Factors Weigh Heavily in Favor of Granting Defendant-Appellant Relief.................................................................................................7

      A. Defendant-Appellant Has Shown Sufficient Probability of Success on the Merits.................................................................................................7

         a. Standard for Probability of Success.......................................................7

         b. Defendant-Appellant Has Shown Sufficient Probability of Success on the Issue of Waiver .........................................................................8

         c. Defendant-Appellant Has Shown Sufficient Probability of Success on the Issue of Leave to Amend ......................................................12

         d. Defendant-Appellant Has Shown Sufficient Probability Of Success On The Issue Of Timely Raising Presidential Immunity In His Answer To Plaintiff-Appellee's Amended Complaint ...................................................15

      B. Defendant-Appellant Will Suffer Irreparable Harm if No Stay is Granted..17

      C. Plaintiff-Appellee Will Not Suffer Harm from a Stay Pending Appeal...19

      D. The Public Interest Favors a Stay .........................................................21

CONCLUSION ..................................................................................23

CERTIFICATE OF WORD COUNT……………………………………………..24

i

## <u>TABLE OF AUTHORITIES</u>

***Cases***

*Baker v. Carr,*
    69 U.S. 186 (1962)......................................................................10

*Barr v. Matteo,*
    360 U.S. 564 (1959)....................................................................13

*Behrens v. Pelletier,*
    516 U.S. 299 (1996)....................................................................17

*Blue Ridge v. Republic of Argentina,*
    735 F.3d 72 (2d Cir. 2013) ...........................................................3

*Carroll v Trump,*
    49 F.4th 759 (2d Cir. 2022) ....................................................7, 21

*CDX Diagnostics v. U.S. Endoscopy Group,*
    13-CV-05669 NSR, 2014 WL 2854656 (S.D.N.Y. June 20, 2014)..............19

*Citigroup Glob. Markets v. VCG.,*
    598 F.3d 30 (2d Cir. 2010) ........................................................6, 7

*Clapper v. Amnesty Int'l,*
    568 U.S. 398 (2013)......................................................................9

*Clinton v. Jones,*
    520 U.S. 681 (1997)...................................................................8, 9

*Cohen v. Beneficial Indus.,*
    337 U.S. 541 (1949).....................................................................3

*Deutsch v. Health Ins. Plan,*
    73 F. Supp. 1443 (S.D.N.Y. 1983) .............................................15

*District of Columbia v. Jones,*
    919 A.2d 604 (D.C. Cir. 2007) ....................................................16

*EM Ltd. v Banco Cent. De La Republica,*
    800 F.3d 78 (2d Cir. 2015) ...........................................................3

*Foman v. Davis,*
    371 U.S. 178 (1962)....................................................................11

*Goodman v Samsung Elecs. Am.,*
    17-CV-5539 (JGK), 2017 WL 5636286 (S.D.N.Y. Nov. 22, 2017) .............19

*Goshtasby v. Bd. of Trs.,*
    123 F.3d 427 (7th Cir. 1997) .......................................................17

*Griggs v. Provident Consumer Discount,*
    459 U.S. 56 (1982).......................................................................4

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)..................................................................5, 8

*In re Country Squire Assoc. of Carle Place,*
    203 B.R. 182 (2d Cir. 1996) .......................................................17

*In re World Trade Ctr. Disaster Site Litig.,*
    503 F.3d 167 (2d Cir. 2007) ...........................................6, 18, 20, 21

*Ins. Corp. of Ireland v. Cie. des Bauxites,*
    456 U.S. 694 (1982)...................................................................10

*Japan Whaling Ass'n v. Am. Cetacean Soc.,*
    478 U.S. 221 (1986)...................................................................10

*Lujan v. Defenders of Wildlife,*
    504 U.S. 566 (1992)...................................................................10

*McFadden v. Monroe Cty. Sheriff,*
    No. 00-cv-6034, 2002 WL 1348508 (W.D.N.Y. Apr. 16, 2002) .................15

iii

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985)...........................................................................1, 16, 18

*Mohammed v. Reno,*
    309 F.3d 95, 101 (2d Cir. 2002) .....................................................6

*Molo Design v. Chanel,*
    21-CV-01578-VEC, 2022 WL 2135628 (S.D.N.Y. May 2, 2022) ..............19

*MyWebGrocer v. Hometown Info,*
    375 F.3d 1902 (2d Cir. 2004) ..........................................................6

*Nixon v. Fitzgerald,*
    457 U.S. 731(1982)....................................................................3, 7, 8, 12, 21

*Rinaldi v. City of New York,*
    756 F.Supp. 111 (S.D.N.Y. 1990) ..................................................12

*Shields v. Citytrust Bancorp,*
    25 F.3d 1124 (2d Cir. 1994) ....................................................15, 16

*Siegert v. Gilley,*
    500 U.S. 226 (1991)........................................................................16

*Sorano v. Taggart,*
    642 F. Supp.2d 45 (S.D.N.Y. 2009) ...............................................12

*Stephenson v. Doe,*
    332 F.3d 68 (2d Cir. 2003) ............................................................12

*United States v. Rodgers,*
    101 F.3d 247 (2d Cir. 1996) ............................................................5

*Williams v. Brooks,*
    996 F.2d 728 (5th Cir.1993) ......................................................5, 17

iv

# *Rules and Statutes*

28 U.S.C. § 2679(d)(2)................................................................1

FRAP 8(a)(2)....................................................................3, 4

FRCP 12(h)(3) ................................................................10

Rule 15(a) ....................................................................11

## <u>INTRODUCTION AND SUMMARY</u>

Defendant-Appellant, Donald J. Trump ("Defendant-Appellant"), seeks an emergent stay pending appeal of the underlying action brought by Plaintiff-Appellee E. Jean Carroll ("Plaintiff-Appellee").

The questions at issue are whether presidential immunity can be waived at all, and if so whether it was waived here; whether Defendant-Appellant should have been granted leave to amend his Answer to raise such immunity; and, finally, whether Defendant-Appellant properly raised the immunity in an Answer responding to Plaintiff-Appellee's Amended Complaint.

The instant appeal is meritorious because presidential immunity is an "essential Presidential prerogative" that is firmly "rooted in the constitutional tradition of the separation of powers." *See Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982). As such, it is a matter of subject matter jurisdiction that is inherently non-waivable. *See* FRCP 12(h)(3). Even assuming that it is waivable, the District Court erred in denying Defendant-Appellant's request to amend his Answer to assert presidential immunity as a defense, particularly in light of the liberal standard to amend, the strength of Defendant-Appellant's argument, and the important policy considerations at play. Finally, even assuming *arguendo* that the defense is waivable, was waived, and leave to amend was properly denied, Defendant-Appellant should still have been permitted to plead the defense of in his Answer to Plaintiff-Appellee's

Amended Complaint, which "supersede[d] the original [complaint], and render[ed] it of no legal effect." *Shields v. Citytrust Bancorp*, 25 F.3d 1125, 1128 (2d Cir. 1994).

Finally, presidential immunity is an "immunity from suit rather than a mere defense to liability" which is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Given that the underlying action is currently scheduled to proceed to trial on January 15, 2024, it is a foregone conclusion that, absent a stay, Defendant-Appellant would be required to proceed to trial without a final resolution of his presidential immunity defense, which has been properly asserted on multiple grounds. Therefore, a stay of proceedings is necessary to resolve the critical and dispositive issues raised in the instant appeal.

## STATEMENT OF FACTS

In June of 2019, Plaintiff-Appellee made public accusations against Defendant-Appellant, then-sitting President of the United States, claiming that he had raped her at some point in the mid-1990s. *See* Declaration of Michael T. Madaio, Exhibit A.[1] In response, Defendant-Appellant publicly refuted said allegations.

On November 4, 2019, Plaintiff-Appellee commenced an action in New York state court, entitled *Carroll v. Trump*, Index No. 160694/2019, asserting a single defamation claim against Defendant-Appellant. *Id.*

---

[1] All Exhibit references herein refer to the Exhibits attached to the Declaration of Michael T. Madaio.

The United States subsequently certified that Defendant-Appellant's conduct was within the scope of his presidential duties under the Westfall Act. *See* Ex. C. On this basis, the action was removed to the Southern District pursuant to 28 U.S.C. § 2679(d)(2).

This certification issue was the subject of a multi-year appeal before this Court that was ultimately remanded back to the District Court. *See* Ex. D. The issue ultimately became moot for reasons that are not relevant to the instant appeal.

On December 22, 2022, Defendant-Appellant moved for summary judgment dismissing this action on the basis of presidential immunity or, in the alternative and to the extent the District Court held such defense had been previously waived, for leave to amend his Answer to raise the defense. *See* Exs. E, F. The District Court denied the motion on July 5, 2023, and Defendant-Appellant appealed on July 19, 2023. *See* Exs. G, H.

Plaintiff-Appellee subsequently moved to amend her Complaint, Ex. I, which the District Court granted on June 13, 2023. *See* Ex. J. Defendant-Appellant timely filed his Answer to the Amended Complaint on June 27, 2023 and raised the defense of presidential immunity. *See* Ex. K. The District Court struck that defense on August 7, 2023. Ex. L. Thereafter, Defendant-Appellant filed the instant appeal which has since been consolidated with the previous appeal. *See* Exs. M, P.

On July 27, 2023, Defendant-Appellant moved before the District Court for a stay of proceedings pending resolution of this appeal. On August 18, 2023, the District Court denied Defendant-Appellant's motion. *See* Ex. N.

That same day, Defendant-Appellant's counsel emailed Plaintiff-Appellee's counsel to inform them that Defendant-Appellant intended to move before this Court for an emergency stay of proceedings. *See* Ex. O.

## <u>JURISDICTION</u>

This Court has appellate jurisdiction (1) over the District Court's denial of presidential immunity and (2) to stay litigation pending that determination pursuant to FRAP 8(a)(2). It is not meaningfully in dispute that rejection of a presidential immunity is immediately appealable, as the District Court "assumed without now deciding." *See* Ex. P at n.22; *see also Nixon*, 457 U.S. at 731 (denial of presidential immunity is immediately appealable).

Indeed, this Court has routinely held that denials of immunity based on a theory of *waiver* are immediately appealable just as any other denial of such immunity. *See*, *e.g.*, *EM Ltd. v Banco Cent. De La Republica*, 800 F.3d 78, 82 (2d Cir. 2015) (holding denial of foreign sovereign immunity as waived was immediately appealable); *Blue Ridge v. Republic of Argentina*, 735 F.3d 72, 79-81 (2d Cir. 2013) (holding denial of foreign sovereign immunity as waived was immediately appealable).

4

Thus, upon accepting jurisdiction for the appeal, FRAP 8(a)(2) specifically allows this Court to issue a stay of the underlying litigation pending appellate resolution.

## LEGAL ARGUMENT

The underlying litigation should be stayed pending appeal because the District Court has been divested of jurisdiction—as the questions on appeal go to Defendant-Appellant's immunity from the suit in its entirety—and because the traditional factors to be considered for such stays weigh staying litigation regardless of whether the District Court retains jurisdiction.

## I. THE DISTRICT COURT HAS BEEN DIVESTED OF JURISDICTION PENDING APPEAL

The underlying litigation must be stayed on the basis that the District Court is currently divested of jurisdiction.

Interlocutory appeals divest trial courts of jurisdiction "over those aspects of the case involved in the appeal"; presidential immunity confers immunity from suit in its entirety; and therefore appeals involving immunity from suit pertain to—and divest jurisdiction from the District Court over—the entirety of the litigation. *See Griggs v. Provident Consumer Discount*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal…confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

Because this appeal involves immunity from the suit in its entirety, the appeal divests the District Court of jurisdiction from the entirety of the suit while the appeal remains pending. *See*, *e.g.*, *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) ("A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals."); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed." ); *Williams v. Brooks*, 996 F.2d 728, 729 (5th Cir.1993) (the "rule that…filing []a notice of appeal divests a district court of jurisdiction…applies with particular force in the immunity context.").

As noted in the District Court's August 18, 2023 Order, the District Court would only retain jurisdiction over the action if this appeal were frivolous. *See* Ex. P at n.22. As set forth in greater detail below, Defendant-Appellant's arguments on appeal have a substantial likelihood of success and, at the very least, are not frivolous. This appeal raises questions for which there are no binding cases on point and which have therefore ***never been settled***, and which delineate the limits of the constitutional separation of powers. Moreover, as set forth below, Defendant-Appellant has numerous compelling and meritorious arguments that will be advanced on appeal.

6

Thus, the District Court's finding that the instant appeal is frivolous simply does not withstand scrutiny and the District Court has been divested of jurisdiction to proceed forward with the underlying action.

## II.  THE STAY FACTORS WEIGH HEAVILY IN FAVOR OF GRANTING DEFENDANT-APPELLANT RELIEF

Regardless of whether the District Court retains any jurisdiction pending appeal, the general factors to be considered in issuing a stay pending appeal nonetheless support a stay in this case.

"The four factors to be considered in issuing a stay pending appeal are well known: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *World Trade Ctr. Disaster Site Litig.,* 503 F.3d 167, 170 (2d Cir. 2007).

### A.  Defendant-Appellant Has Shown Sufficient Probability of Success on the Merits

#### a. Standard For Probability Of Success

While these four factors are relatively settled, ultimately, "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002); *see, e.g.*, *MyWebGrocer v. Hometown Info*, 375 F.3d 190, 192 (2d Cir. 2004)

7

(requiring "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation."); *Citigroup Glob. Markets v. VCG.*, 598 F.3d 30, 37 (2d Cir. 2010) (affirming the "serious questions" standard).

Here, it is beyond dispute that a serious question exists, considering this is a fundamental question as to the separation of powers and the President's authority ***that have never been settled***, and this Court's previous acknowledgement that the related question of Westfall Act immunity presented "a question of extreme public importance" because "the question touches upon the duties of the President of the United States, and the personal tort liability he and his successors may (or may not) face under the Westfall Act." *Carroll v Trump*, 49 F.4th 759, 780 (2d Cir. 2022).

Regardless, under any standard, it is clear that Defendant has advanced several independent arguments that each have a very significant likelihood of success on appeal. Thus, for the reasons set forth below, this factor weighs heavily in Defendant-Appellant's favor.

### b. Defendant-Appellant Has Shown Sufficient Probability Of Success On The Issue Of Waiver

First, Defendant-Appellant's non-waiver argument is grounded in Supreme Court precedent which stands for the proposition that presidential immunity is an "essential Presidential prerogative" that is firmly "rooted in the constitutional tradition of the separation of powers," *Nixon v*, 457 U.S. at 743. As such, it is a

"functionally mandated incident of the President's unique office" which, when applicable, inherently precludes the judiciary from exercising jurisdiction over the head of the Executive Department for acts taken within the scope of his official duties. *Id.* at 743.

Indeed, the Supreme Court has recognized that presidential immunity stands apart from other forms of absolute immunity because it is "derive[d] in principal part from factors unique to [the President's] constitutional responsibilities and station," *Harlow*, 457 U.S. at 800, n.17, which is necessarily infringed upon when a President's official acts are subject to civil liability because this type of overreach by the judiciary "curtail[s] the scope of the official powers of the Executive Branch." *Clinton v. Jones*, 520 U.S. 681, 682 (1997); *see also Nixon*, 457 U.S. at 754 ("[t]he executive power is vested in [the] President; and as far as his powers are derived from the constitution, he is beyond the reach of any other department, except in the mode prescribed by the constitution through the impeaching power.").

 Consequently, presidential immunity, unlike "[s]uits against other officials [which]…generally do not invoke separation-of-powers considerations," *Harlow*, 457 U.S. at n. 17 (1982), implicates grave separation of powers concerns. The *Nixon* Court expressly noted that a court is divested of jurisdiction in cases where presidential immunity applies, as the separation of powers doctrine flatly prohibits a court from imposing civil liability upon a President for his official acts:

> [O]ur cases [] have established that a court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch. When judicial action is needed to serve broad public interests—as when the Court acts, not in derogation of the separation of powers, but to maintain their proper balance…or to vindicate the public interest in an ongoing criminal prosecution…the exercise of jurisdiction has been held warranted. ***In the case of [a] merely private suit for damages based on a President's official acts, we hold it is not.***

*Id.* at 754, 2703 (citations omitted) (emphasis added).

The interplay between presidential immunity and the separation of powers doctrine was further confirmed in *Clinton v. Jones*, when the Supreme Court clarified that the "dominant concern" in *Nixon* was that a President's "decisionmaking process" may be distorted due to "needless worry as to the possibility of damages actions stemming from any particular official decision." *Clinton*, 520 U.S. at 694. While the *Clinton* court concluded that President Clinton was not entitled to presidential immunity, the Court's decision found that the conduct at issue took place *before* President Clinton was in office; therefore, the Court reasoned, "[w]hatever the outcome of this case, there is *no possibility* that the decision will *curtail the scope of the official powers of the Executive Branch.*" *Clinton*, 520 U.S. at 682 (emphasis added).

The Supreme Court's holdings in *Nixon* and *Clinton* are consistent with the fundamental principle that the separation of powers doctrine is inherently tied to the question of Article III standing. *See*, *e.g.*, *Clapper v. Amnesty Int'l*, 568 U.S. 398,

408 (2013*)* ("The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches."). Article III standing, in turn, implicates a court's subject matter jurisdiction, *see*, *e.g.*, *Ins. Corp. of Ireland v. Cie. des Bauxites*, 456 U.S. 694, 702 (1982) ("Subject-matter jurisdiction…is an Art. III…requirement."), which, critically, cannot be waived, *see* FRCP 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Further support for the proposition that presidential immunity is a non-waivable matter of subject matter jurisdiction is found in the well-established principle that "controversies which revolve around policy choices and value determinations constitutionally committed…[to] the confines of the Executive Branch" are "exclude[d] from judicial review." *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986); *see also Baker v. Carr*, 369 U.S. 186, 210 (1962) ("The nonjusticiability of a political question is primarily a function of the separation of powers."); *Lujan v. Defenders of Wildlife*, 504 U.S. 566, 577 (1992) (finding that the separation of powers doctrine is violated, and Article III standing is lacking, when the judiciary "'assume[s] a position of authority over the governmental acts of another and co-equal department' and [] become[]s 'virtually continuing monitors of the wisdom and soundness of Executive action.'") (citation omitted).

Based on the foregoing, it is readily apparent that presidential immunity is a non-waivable matter of subject matter jurisdiction. As such, the District Court erred in finding that Defendant-Appellant had waived this defense.

### c. Defendant-Appellant Has Shown Sufficient Probability Of Success On The Issue Of Leave To Amend

Assuming *arguendo* that presidential immunity is waivable, Defendant-Appellant should have been granted leave to amend his Answer to raise it as a defense.

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." FRCP 15(a). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181–82 (1962).

The District Court denied Defendant-Appellant leave to amend his Answer to raise presidential immunity based on his purported delay in raising that defense and the apparent futility of the argument. *See* Ex. G at 20. Defendant-Appellant respectfully submits that it was an abuse of discretion to deny leave to amend on either ground.

First, the stage in which Defendant-Appellant first raised his presidential immunity argument—in a motion for summary judgment—is neither remarkable nor uncommon. Indeed, New York courts routinely permit immunity defenses to be

raised at this stage in litigation, even when not previously pleaded. *See*, *e.g.*, *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) (Finding that qualified immunity defense was not waived when it was not plead in answer but was "asserted…in other pretrial submissions."); *Rinaldi v. City of New York*, 756 F.Supp. 111, 115 n. 3 (S.D.N.Y. 1990) ("Defendants who do not assert qualified immunity in their answer can still raise qualified immunity…at summary judgment."); *Sorano v. Taggart*, 642 F. Supp.2d 45, 55-56 (S.D.N.Y. 2009) (permitting defendant to raise qualified immunity defense for the first time in motion for summary judgment). Thus, Defendant-Appellant properly asserted his presidential immunity in his motion for summary judgment.

Defendant-Appellant has a similarly meritorious argument that the District Court abused its discretion in denying leave to amend on the basis that Defendant-Defendant-Appellant's presidential immunity would be futile.

A President is entitled to wide-ranging immunity for conduct that occurs within the "outer perimeter" of his official responsibilities. *Nixon*, 457 U.S. at 749. In determining whether presidential immunity applies, the relevant inquiry is whether the liability in a civil lawsuit is "predicated on [the President's] official acts." *Nixon,* 457 U.S. at 749. A President's "sphere of protected action" is interpreted broadly and extends to conduct within the "outer perimeter of his official responsibilities." *Id.* at 756.

13

In finding Defendant-Appellant's immunity argument to be futile, the District Court accepting Defendant-Appellant's contention that he was "addressing a matter of public concern because the accusation [had] 'impugned his character and, in turn, threatened his ability to effectively govern the nation,' as well as the proposition that "the president's speech on a matter of public concern comes within the president's official responsibilities." Ex. G at 23. This should have been the end of the District Court's inquiry, as it is well settled that, in determining whether presidential immunity applies, courts are obligated to look towards the *objective* nature of the act in question, not perform a subjective "inquiry into the President's motives" because "[i]nquiries of this kind could be highly intrusive." *Nixon*, 457 U.S. at 756; *see also Barr v. Matteo*, 360 U.S. 564, 575 (1959) ("[T]he claim of an unworthy purpose does not defeat the privilege [of absolute immunity].").

The District Court proceeded to perform precisely the type of "highly intrusive inquiry" that the Supreme Court has prohibited, finding: "[e]ven assuming that [Defendant-Appellant's] decision publicly to deny an accusation of personal wrongdoing comes within the outer perimeter of his official duties, it does not follow that [Defendant-Appellant's] *own personal attacks* on his [] accuser equally fall within that boundary." Ex. H at 25 (emphasis added). In construing Defendant-Appellant's statements as a "personal attack" against Plaintiff-Appellee, the District

14

Court failed to utilize the objective approach that is required for presidential immunity.

The District Court also found that presidential immunity would not apply to Defendant-Appellant's statement that Plaintiff-Appellee had "fabricated" her claims and that she "did so for financial and personal gain." *See* Ex. G at p. 25. Yet, in so finding, the District Court failed to recognize that this was only a minor portion of Defendant's statement, which largely focused on the larger denial of the heinous allegations levied by Plaintiff-Appellee. Further, the Court's holding is arbitrary inasmuch as it determined that a President may deny that he committed a rape and never met the alleged victim, but somehow crossed the threshold into unprotected behavior by stating the logical and reasonable inference that the false accusation must have been "fabricated."

Therefore, Defendant-Appellant has a significant likelihood of overturning the District Court's decision to deny his leave to amend his Answer to assert presidential immunity.

### d. Defendant-Appellant Has Shown Sufficient Probability Of Success On The Issue Of Timely Raising Presidential Immunity In His Answer To Plaintiff-Appellee's Amended Complaint

Finally, Defendant-Appellant properly and timely raised the defense of presidential immunity in his Answer to the Amended Complaint.

15

It is well settled that an amended complaint "supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp,* 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted). Importantly, this means that affirmative defenses that could have been—but were not—raised in an original answer may be raised in an answer to an amended complaint. *See McFadden v. Monroe Cty. Sheriff*, No. 00-cv-6034, 2002 WL 1348508, at *3 (W.D.N.Y. Apr. 16, 2002) (explaining that defendants' response to the amended complaint **"**was not an amended answer, but merely an answer**"** and so defendants were permitted to raise previously unpled affirmative defenses."); *Deutsch v. Health Ins. Plan*, 573 F. Supp. 1443, 1445 (S.D.N.Y. 1983) ("An amended complaint represents a plaintiff's second bite at the apple, and a defendant should be accorded the same privilege.").

In this context, the only "defenses and objections that are irrevocably waived by answering an original complaint are those that 'involve the core issue of a party's willingness to submit a dispute to judicial resolution,' such as objections to 'lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service.'" *Deutsch*, 573 F.Supp. at 1445 (citing *Shields*, 25 F.3d at 1124).

Defendant-Appellant timely raised presidential immunity in his Answer to Plaintiff-Appellee's Amended Complaint. *See* Exs. K, N. The District Court, however, overlooked the above-reference standard for reviving previously-waived affirmative defenses, as established in *Shields* and its progeny, and merely stated, in

16

conclusory fashion, that "[t]he opportunity to answer an amended complaint is not a free pass to correct past wrongs without justification or basis for doing so." Ex. L at 22. Further, considering the District Court's prior decision that presidential immunity is not a jurisdictional issue, *see* Ex. G at 16, revival of this defense should have been permitted under the *Shields* standard.

Defendant-Appellant has therefore set forth a likelihood of success on the merits with respect to the important and novel arguments that will be determined on appeal, sufficient to justify a stay pending appeal and certainly sufficient to meet the standard of being non-frivolous necessary to divest the District Court of jurisdiction.

### B. Defendant-Appellant Will Suffer Irreparable Harm If No Stay Is Granted

The risk of irreparable harm is patent. Immunity provisions, whether absolute or qualified, serve to spare officials from unwarranted liability as well as "demands customarily imposed upon those defending a long drawn-out lawsuit," and are "effectively lost if a case is erroneously permitted to go to trial." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (citation omitted).

"The purpose of conferring absolute immunity is to protect officials not only from ultimate liability but also from all the time-consuming, distracting, and unpleasant aspects of a lawsuit[.]" *District of Columbia v. Jones*, 919 A.2d 604, 611 (D.C. Cir. 2007); *see also Mitchell*, 472 U.S. at 525 ("[T]he essence of absolute

17

immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.").

Assertions of immunity provide protection "not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996). This purpose is inherently and unavoidably frustrated by acknowledging a President's immunity only *after* he is forced to stand trial. Applying presidential immunity only after the conclusion of litigation irreparably and indisputably forfeits the President's constitutional right to not suffer through conducting litigation based on his actions as sitting President. *See In re Country Squire Assoc. of Carle Place*, 203 B.R. 182, 183 (2d Cir. 1996) (noting that it is the "quintessential form of prejudice" when "absent a stay pending appeal...the appeal will be rendered moot.").

In this context, irreparable harm results when a defendant is forced to proceed with a matter while the issue of immunity has yet to be resolved. *Goshtasby v. Bd. of Trs.*, 123 F.3d 427, 428 (7th Cir. 1997) ("[I]f the defendant is correct that it has immunity, its right to be free of litigation is compromised...if the district court proceeds while the appeal is pending."); *see also, Williams v. Brooks*, 996 F.2d 728, 730 n.2 (5th Cir. 1993) (immunity "'is effectively lost' if a case is erroneously permitted to proceed...while an interlocutory appeal of a denial of immunity is pending.") (citation omitted)*.

Therefore, since the issue of whether Defendant-Appellant is immune from suit has yet to be determined, Defendant-Appellant would be irreparably injured without the imposition of a stay of the underlying action.

### C.    Plaintiff-Appellee Will Not Suffer Harm from a Stay Pending Appeal

Where harm to the plaintiff is a factor to be considered before staying an appeal, the very existence of the stay, without more, cannot constitute that harm or it would otherwise be a meaningless factor. While no delay is ideal, here Plaintiff-Appellee will suffer no more harm than any other litigant, and less than many.

Plaintiffs must show significant and particularized hardship to outweigh the irreparable harm defendants will suffer when litigation is not stayed pending review of their claim for immunity, and Plaintiff-Appellee has made no such unique showing. *See e.g.*, *World Trade Ctr.*, 503 F.3d at 170. In the case of *World Trade Ctr.,* regarding toxic fumes inhaled by workers at the "ground zero site" of the World Trade Center disaster, the court recognized that the defendants faced irreparable harm if litigation was not stayed pending appeal of their claim of immunity. *Id.* In order to overcome that irreparable harm, it took a showing that the many of the plaintiffs faced life-threatening injuries and that other plaintiffs had already died while litigation was pending. *Id.* at 171.

Here, there is no reason to fear that Plaintiff-Appellee would suffer any greater harm than any other plaintiff whose litigation is stayed should this Court grant a stay.

While the District Court relied on Plaintiff-Appellee's "advanced age" as a basis for such harm, it ignored that Plaintiff-Appellee's waited more than twenty years *after* the alleged events occurred to raise her public accusations (that Defendant-Appellant was certain to refute). *See* Ex. I at ¶¶ 25, 67. Absent this delay, Appellee could have been two decades younger during the underlying litigation, and her delay should not weigh against the public's interests in staying litigation.

Moreover, to the extent Plaintiff-Appellee may argue that she will be prejudiced due to any delay in litigation, any such argument is not, on its own, a valid reason to deny a stay. New York courts consistently recognize that "'mere delay in the litigation does not establish undue prejudice' for purposes of a motion to stay." *Goodman v Samsung Elecs. Am*, 17-CV-5539 (JGK), 2017 WL 5636286, at *3 (S.D.N.Y. Nov. 22, 2017); *see also Molo Design v. Chanel*, 21-CV-01578-VEC, 2022 WL 2135628, at *3 (S.D.N.Y. May 2, 2022) ("Mere delay does not constitute prejudice."); *CDX Diagnostics v. U.S. Endoscopy Group*, 13-CV-05669 NSR, 2014 WL 2854656, at *4 (S.D.N.Y. June 20, 2014) (same).

Thus, any inconvenience Plaintiff-Appellee may endure as a result of a stay is considerably outweighed by the interest in "vindicating the immunity of a[] defendant[] who might be entitled to immunity from suit." *World Trade Ctr.*, 503 F.3d 167, 170 (2d Cir. 2007). This is especially true where there are important and novel questions involving the limits of the separation of powers doctrine, the extent

of protection afforded under presidential immunity, and the degree of autonomy afforded to the head of the Executive Branch. These considerations clearly outweigh the minor prejudice, if any, that Plaintiff-Appellee claims she will suffer if a stay is imposed.

### D.     The Public Interest Favors a Stay

As an initial matter, any question involving presidential immunity is fundamentally unique because the results are effectively certain to guide the manner in which future Presidents carry out their presidential duties. As set forth herein, if a President is forced to engage in litigation involving his official acts *before* the immunity issue is resolved, every sitting President will be vulnerable to being dragged into unnecessary litigation, thereby hindering their efforts to effectively lead the Nation. It is therefore ***particularly*** inappropriate for litigation to progress while the question of presidential immunity remains unsettled.

As previously recognized by this Court, when an appeal to determine whether immunity applies remains pending generally, "there is a public interest in vindicating the immunity of any of the Defendants who might be entitled to immunity from suit" by staying litigation until the question of that immunity has been resolved. *World Trade Ctr.,* 503 F.3d at 170.

With respect to the interests involved in instant matter, this Court has already acknowledged that the related question of Westfall Act immunity presented "a

21

question of extreme public importance" because "the question touches upon the duties of the President of the United States, and the personal tort liability he and his successors may (or may not) face under the Westfall Act." *Carroll*, 49 F.4th at 780.

Indeed, the Supreme Court has recognized that there "exists the greatest public interest in providing" the President with wide-spanning immunity in the performance of his official acts, and that deprivation of such immunity would be to the "detriment of not only the President and his office but also the Nation that the Presidency was designed to serve." *Nixon*, 457 U.S. at 752. In particular, the Supreme Court reasoned:

> Because of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government…[A] President must concern himself with matters likely to 'arouse the most intense feelings"…Yet, as our decisions have recognized, it is in precisely such cases that there exists the greatest public interest in providing an official "the maximum ability to deal fearlessly and impartially with" the duties of his office…This concern is compelling where the officeholder must make the most sensitive and far-reaching decisions entrusted to any official under our constitutional system. Nor can the sheer prominence of the President's office be ignored. In view of the visibility of his office and the effect of his actions on countless people, the President would be an easily identifiable target for suits for civil damages. Cognizance of this personal vulnerability frequently could distract a President from his public duties, to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve.

*Id.* at 752-753 (citations omitted).

Simply put, it strains credulity to argue any minor inconvenience that Plaintiff-Appellee would endure during a stay is remotely tantamount to the public's

interest in obtaining final resolution as to the question of whether presidential immunity is underpinned by the separation of powers doctrine, so as to provide the President a non-waivable immunity from civil liability in the execution of his presidential duties.

Based on the foregoing, it is incontrovertible that there are immense public interests at play, and that a stay pending resolution of these vital questions weighs heavily in Defendant-Appellant's favor.

## **<u>CONCLUSION</u>**

For these reasons, Defendant-Appellant respectfully requests that this Court grant a stay of all proceedings in the underlying case pending appeal.

Dated:  August 24, 2023             Respectfully submitted,
      New York, New York

                               */s/ Michael T. Madaio*
                               Michael T. Madaio, Esq.
                               HABBA MADAIO & ASSOCIATES LLP
                               1430 U.S. Highway 206, Suite 240
                               Bedminster, New Jersey 07921
                                         -and-
                               112 West 34th Street, 17th & 18th Floors
                               New York, New York 10120
                               Phone: (908) 869-1188
                               Fax: (908) 450-1881
                               Email: mmadaio@habbalaw.com
                               *Attorneys for Defendant-Appellant,*
                               *Donald J. Trump*

## **WORD COUNT CERTIFICATION**

I certify that this brief complies with the word limit requirements in Second Circuit Local Rule 27.1 and Federal Rule of Appellate Procedure 27(d)(2) because this brief contains 5,200 words.

/s/ Michael T. Madaio___
MICHAEL T. MADAIO