# 23-1045
# 23-1146

## United States Court of Appeals
## For the Second Circuit

E. JEAN CARROLL,

*Plaintiff-Counter-Defendant-Appellee,*

-against-

DONALD J. TRUMP,

*Defendant-Counter-Claimant-Appellant.*

## PRESIDENT TRUMP'S PETITION FOR EN BANC REHEARING AND APPLICATION FOR A STAY OF DISTRICT COURT PROCEEDINGS

MICHAEL T MADAIO, ESQ.
ALINA HABBA, ESQ.
HABBA MADAIO & ASSOCIATES, LLP
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
-and-
112 West 34th Street, 17th & 18th Fl
New York. New York 10120
mmadaio@habbalaw.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

RULE 35(b) STATEMENT AND INTRODUCTION ............................................. 1

ARGUMENT .................................................................................3

I.   This Appeal Involves An Issue Of Exceptional Importance .....................3

II.   En Banc Review is Necessary To Maintain Uniformity Of
The Court's Decisions ..................................................................5

    A. The Panel Opinion Conflicts With Supreme Court Precedent
Concerning Judicial Interference With Execute Function ..................5

       i.     The Opinion Erroneously Reframes *Nixon, Clinton,* and
*Johnson* As "Drive-By Jurisdictional Rulings" ........................5

       ii.    The Panel's Separation-of-Powers Analysis Is Inconsistent
With The Supreme Court's Historical Approach To
Addressing Inter-Branch Conflicts ...........................................8

       iii.   The Panel Departed From The Supreme Court's Treatment
Of Presidential Immunity ..........................................................10

    B. The Panel Violated The *Griggs* Divestiture Rule By Permitting
The District Court to Retain Jurisdiction Throughout The
Pendency Of This Non-Frivolous Appeal ...........................................11

       i.     "Judicial Economy And Efficiency" Is Not An Exception
To The *Griggs* Divestiture Rule ...............................................11

       ii.    Since The Panel Declines To Rule On Frivolity,
The Dual Jurisdiction Cannot Apply .......................................14

III.  A Stay Of Proceedings Is Necessary To Protect President Trump's
Rights ...........................................................................................16

CONCLUSION ..........................................................................18

ADDENDUM ....................................................................... A1-39

## <u>TABLE OF AUTHORITIES</u>

***Cases***

*Arbaugh v. Y & H Corp.,*
   546 U.S. 500 (2006)............................................................................6

*Arthur Andersen LLP v. Carlilse*,
   556 U.S. 624 (2009)..............................................................13, 14, 15

*Behrens v. Pelletier*,
   516 U.S. 229 (1996).....................................................................13, 14

*Betances v. Fischer*,
   140 F. Supp. 3d 294 (S.D.N.Y. 20150) .......................................13, 14

*Carroll v. Trump,*
   49 F.4th 759 (2d Cir. 2022) .............................................................4

*Carroll v. Trump*,
   20-CV-7311-LAK, 2023 WL 5312894 (S.D.N.Y. Aug. 18, 2023)............12, 13

*Clinton v. Jones*,
   520 U.S. 681 (1997)...........................................................2, 6, 7, 8

*Coinbase, Inc. v. Bielski*,
   599 U.S. 736 (2023).......................................... 12, 13, 14, 15, 16, 17

*Dole Food Co. v. Patrickson*,
   548 U.S. 468 (2003)........................................................................10

*Griggs v. Provident Consumer Discount Co.*,
   459 U.S. 56 (1982)....................................................11, 12, 13, 16, 17

*Harlow* v. *Fitzgerald*,
   457 U.S. 800 (1982).......................................................2, 10, 11, 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   42 F. Supp. 3d 556 (S.D.N.Y. 2014) ...............................................14

*Kendall v. United States*,
 12 Pet. 524 (1838) ............................................................................4

*Kistner v. City of Buffalo*,
 8-CV-402-LJV-JJM, 2023 WL 21219 (W.D.N.Y. Jan. 3, 2023) ...............12, 13

*Massachusetts v. Mellon*,
 262 U.S. 447 (1989) ...........................................................................9

*Mississippi v. Johnson*,
 71 U.S. 475 (1866) ...................................................................2, 5, 6, 8

*Mistretta v. United States*,
 488 U.S. 361 (1989) ........................................................................2, 9

*Mitchell v. Fortsyth*,
 472 U.S. 511 (1985) ..........................................................................17

*Nixon v. Administrator of General Services*,
 433 U.S. 425 (1977) ...........................................................................9

*Nixon v. Fitzgerald*,
 457 U.S. 731 (1982)............................................ 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 17

*Pierson v. Ray*,
 386 U.S. 547 (1967) ..........................................................................11

*Reed Elsevier v. Muchnick*,
 559 U.S. 154 (2010) ...........................................................................6

*Trump v. Mazars USA, LLP*,
 140 S. Ct. 2019 (2020) ......................................................................10

*Trump v. Vance*,
 140 S. Ct. 2412 (2020) ...................................................................2, 17

*United States v. Rodgers*,
 101 F.3d 247 (2d Cir. 1996) ..........................................................13, 14

*United States v. Timewell,*
    387 Fed. App'x 23 (2d Cir 2010) ........................................................13

*Wilkins v. United States,*
    598 U.S. 152 (2023)......................................................................6, 7

*Will v. Haddock,*
    546 U.S. 345 (2006)..........................................................................17

## Rules and Statutes

Fed. R. App. P. 35(a) ..................................................................1

Fed. R. App. P. 40(a)(1)(d) .........................................................1

Defendant-Counter-Claimant-Appellant, President Donald J. Trump ("President Trump"), respectfully submits this petition for en banc rehearing and application for a stay of district court proceedings.[1]

## RULE 35(b) STATEMENT AND INTRODUCTION

Pursuant to the Federal Rules of Appellate Procedure, "[a]n en banc hearing…is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain the uniformity of the court's decisions; or (2) the proceeding involved a question of exceptional importance." Fed. R. App. P. 35(a). This appeal is the rare instance where both conditions are unequivocally met.

First, the question at hand is of paramount importance. The Panel acknowledged that "whether presidential immunity is waivable" is a "vexing question of first impression." A5. It is also a consequential one. Left undisturbed, the Panel's decision will lead to an unprecedented result: a President—for the first time in our Nation's history—will be subject to civil liability for official action. This outcome would disrupt the balance between two coordinate branches and offend the constitutional separation-of-powers. It would also "raise unique risks to the effective

---

[1] This application is timely made within 45 days of entry of judgment since President Trump is a "current or former United States officer or employee" who was sued "in his individual capacity" for an "act…occurring in connection with" his duties as President. Fed. R. App. P. 40(a)(1)(D).

functioning of government," *Nixon v. Fitzgerald*, 457 U.S. 731, 751 (1982), since it would indelibly erode the "protections that safeguard the President's ability to perform his vital functions," *Trump v. Vance*, 140 S. Ct. 2412, 2425 (2020). Given the significance of the moment, en banc review is appropriate and warranted.

Second, the Panel's ruling runs contrary to Supreme Court precedent in several critical respects. For instance, the Panel declined to follow the mandate of three seminal holdings—*Nixon v. Fitzgerald*, *supra*, *Clinton v. Jones*, 520 U.S. 681 (1997), and *Mississippi v. Johnson*, 71 U.S. 475 (1866)—based on the erroneous belief that the decisions are nothing more than "drive-by jurisdictional ruling[s]," A16. The Panel also departed from the Supreme Court's traditional separation-of-powers framework by prioritizing a President's 'right to choose' over the "concern of encroachment and aggrandizement," which inherently flows from allowing the Judiciary to assume a position of authority over a President who is unwilling to submit to its jurisdiction. *Mistretta v. United States*, 488 U.S. 361, 380 (1989). In addition, by finding that presidential immunity is no different than prosecutorial immunity, the Panel departed from *Nixon, supra,* and *Harlow* v. *Fitzgerald*, 457 U.S. 800 (1982), which both emphasize its distinct nature. Therefore, due to the Panel's departure from well-established Supreme Court precedent, en banc review is necessary.

Finally, a stay of district proceedings is warranted pending consideration of this petition. In contravention of mandatory divestiture rules, the District Court has managed to retain jurisdiction pending this non-frivolous appeal, and President Trump will be forced to stand trial in less than two weeks. Given the urgency of the circumstance, the irreparable harm to President Trump, and the public's interest in obtaining a final resolution on the important issues that lie at the heart of this appeal, the trial must be stayed pending resolution of this petition.

## ARGUMENT

### I.   This Appeal Involves An Issue Of Exceptional Importance

This appeal is not merely about waiver or a party's purported failure to plead an affirmative defense. Indeed, the scale is much grander. The defendant here is a former President of the United States, and the complaint seeks to hold him liable for conduct that falls squarely within the "outer perimeter" of his official conduct. *Nixon*, 457 U.S. at 756. The true question, therefore, is whether, and to what extent, the constitutional separation-of-powers operates as a jurisdictional restraint against judicial interference with presidential prerogatives. The answer to this question will impact the balance between the Judicial and Executive Branches, inform the limits on presidential autonomy, and guide the manner in which future presidents carry out their duties. Undoubtedly, this is an issue of eminent importance.

Indeed, the Supreme Court has expressly recognized that there is a "special solicitude due to claims alleging a breach of essential Presidential prerogatives under the separation of powers." *Nixon*, 457 U.S. at 743. It has also recognized that there "exists the greatest public interest in providing" the President with "the maximum ability to deal fearlessly and impartially with the duties of his office." *Id.* at 752 (quotations omitted). For this reason, the Supreme Court has framed presidential immunity as an intrinsic and indispensable component of the office of the presidency. *See id.* at 749 (describing presidential immunity as a "functionally mandated incident of the President's unique office" which is "rooted in the constitutional tradition of the separation of powers.").

The Panel's decision, however, leaves open the possibility that a President could unwittingly surrender his entitlement to official-act immunity. This ruling runs afoul of centuries of historical precedent, which instructs that the constitutional separation-of-powers places the President's official conduct "beyond the reach of any other department." *Id.* at 753, n. 34 (citing *Kendall v. United States*, 12 Pet. 524 (1838)). It also severely diminishes the latitude of protection afforded by presidential immunity and will render future presidents "unduly cautious in the discharge of [their] official duties." *Id.* at 752, n. 32. This outcome is not only wrong, it is dangerous and would be "to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve." *Id.* at 753.

Therefore, this appeal involves a tremendously important question that informs the nature of presidential immunity and the extent to which it insulates presidential prerogatives from judicial interference. As discussed below, the Panel's decision is flawed in several important respects and contravenes centuries of Supreme Court precedent on this issue. Therefore, en banc review is justified.

## II. En Banc Review Is Necessary To Maintain Uniformity Of The Court's Decisions

### A. The Panel Opinion Conflicts With Supreme Court Precedent Concerning Judicial Interference With Executive Function

#### i. The Opinion Erroneously Reframes *Nixon*, *Clinton*, and *Johnson* As "Drive-By Jurisdictional Rulings"

For centuries, the Supreme Court has been guided by the "general principles which forbid judicial interference with the exercise of Executive discretion." *Johnson*, 71 U.S. at 499. This bedrock tenet, rooted in the constitutional separation-of-powers, is at its zenith when it comes to the President, whose "constitutional responsibilities and status" counsel in favor of "judicial deference and restraint." *Nixon*, 457 U.S. at 753.

In practice, the Supreme Court has consistently made clear that this issue is one of jurisdiction. Time and time again, it has held that the Judiciary is simply not permitted to "exercise [] jurisdiction over the President" when the "dangers of intrusion on the authority and functions of the Executive Branch" eclipse the "constitutional weight of the interest to be served." *Nixon*, 457 U.S. at 754 (citations

omitted). In his appellate papers, President Trump relied principally upon three cases that best illustrate this point – *Nixon v. Fitzgerald*, *Clinton v. Jones*, and *Mississippi v. Johnson*. The Panel, however, refused to recognize the precedential effect of these decisions and disregarded them as merely "'drive-by jurisdictional ruling[s]." A16 (quoting *Wilkins v. United States*, 598 U.S. 152, 159-60 (2023)). In coming to this conclusion, the Panel overlooked and/or misconstrued the dispositive jurisdictional analysis contained in each case.

A "drive-by jurisdictional ruling" is a decision that "simply states that 'the court is dismissing for lack of jurisdiction when some threshold fact has not been established.'" *Wilkins*, 598 U.S. at 160 (quoting from *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 512 (2006)).  Unlike this appeal, *Wilkins* and *Arbaugh* are statutory interpretation cases.  The "drive-by" concept discussed in those opinions concerns whether an allegation relating to a statutory element is properly characterized as jurisdictional.  *See Wilkins*, 598 U.S. at 165 ("[N]either this Court's precedents nor Congress' actions established that § 2409a(g) is jurisdictional."); *Arbaugh*, 546 U.S. at 516 ("[W]e hold that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue."); *see also Reed Elsevier v. Muchnick*, 559 U.S. 154, 161 (2010) (describing "a marked desire to curtail…drive-by jurisdictional rulings" that "have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations,

particularly when that characterization was not central to the case, and thus did not require close analysis").

*Wilkins* did not authorize the Panel to depart from the Supreme Court's view that the separation-of-powers is a jurisdictional bar. In *Nixon*, the Court devoted a paragraph-long subsection of the opinion to emphasizing that the "separation-of-powers doctrine" "bar[s] [the] exercise of jurisdiction" in particular scenarios – including the "merely private suit for damages based on a President's official acts." 457 U.S. at 753-54. In his concurring opinion, Justice Berger underscored this point, noting: "[t]he Court's opinion correctly observes that judicial intrusion through private damages actions improperly infringes on and hence interferes with the independence that is imperative to the functioning of the office of the President." *Id.* at 758 (Burger, J., concurring). "That is not a drive-by—that is walking in, sitting down, and staying for cocktails, dinner, and dessert." *Williams v. Taylor Seidenbach, Inc.*, 958 F.3d 341, 351 (5th Cir. 2020) (en banc) (Ho, J., concurring).

*Clinton* was hardly a "drive-by," either. The Supreme Court repeatedly discussed "jurisdiction" throughout the opinion, including three references to the scope of "Article III jurisdiction." 520 U.S. at 701, 702, 703. And its decision that the action could be allowed to proceed against President Clinton turned on a jurisdictional consideration. Namely, since Clinton was being sued for conduct that occurred *before* he was President, the Court reasoned that "[w]hatever the outcome

of this case, there is *no possibility* that the decision will curtail the scope of the official powers of the Executive Branch." *Clinton*, 520 U.S. at 701.

Finally, the Panel's distinction regarding the type of claim in *Mississippi v. Johnson*, A15-16, does not negate the fact that the decision represents another example of the Supreme Court addressing presidential immunity in jurisdictional terms: "[W]e are fully satisfied that this court has *no jurisdiction* of a bill to enjoin the President in the performance of his official duties." 71 U.S. at 501 (1866) (emphasis added). The Court's invocation of jurisdiction in *Johnson*, as in *Nixon* and *Clinton*, was derived from the "general principles which forbid judicial interference with the exercise of Executive discretion." *Id.* at 499.

Accordingly, the Panel's decision cannot be reconciled with the holdings in *Nixon*, *Clinton*, and *Johnson*.

> ii. **The Panel's Separation-of-Powers Analysis Is Inconsistent With The Supreme Court's Historical Approach To Addressing Inter-Branch Conflicts**

In its Opinion, the Panel reasoned that "separation-of-powers considerations militate in favor of…recognizing presidential immunity as waivable" because "a President's autonomy should be protected [and] a President *should* be able to litigate if he chooses to do so." A17 (emphasis in original). This analysis, however, is inconsistent with the Supreme Court's historical method for evaluating inter-branch conflicts.

It is the "concern of encroachment and aggrandizement" that has "animated [the Supreme Court's] separation-of-powers jurisprudence and aroused [its] vigilance against the 'hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power.'" *Mistretta*, 488 U.S. at 380. The Court has always focused on ensuring that one branch is not usurping the authority of another. *See*, *e.g.*, *Massachusetts v. Mellon,* 262 U.S. 447, 487 (1989) ("The general rule is that neither department may invade the province *of the other* and neither may control, direct, or restrain the action *of the other*." (emphasis added)); *see also Nixon v. Administrator of General Services*, 433 U.S. 425, 443 (1977) (the separation of powers "focuses on the extent to which [the act of another branch] prevents the Executive Branch from accomplishing its constitutionally assigned functions."). Thus, the constitutional separation-of-powers operates to limit the authority of each branch, not expand it.

The Panel inverted this approach. It prioritized securing a President's ability to "choose" whether to litigate, A17, over ensuring that he is not forced to unwillingly answer for civil damages predicated on his official acts. In other words, it overlooked the "dangers of intrusion on the authority and function of the Executive Branch" that arise from the Judiciary's exertion of jurisdiction over presidential prerogatives against a President's will. *Nixon*, 457 U.S. at 754. Therefore, the

Panel's separation-of-powers analysis was inconsistent with Supreme Court precedent.

### iii. The Panel Departed From The Supreme Court's Treatment Of Presidential Immunity

The Panel's finding that presidential immunity is no different than prosecutorial immunity, *see* A21 (noting that presidential immunity should be "treated like other forms of immunity"), is inconsistent with the Supreme Court's view on the subject.

The Supreme Court has often acknowledged that the President "occupies a unique position in the constitutional scheme," *Nixon*, 457 U.S. at 749, because he is "the only person who alone composes a branch of government," *Trump v. Mazars*, 140 S. Ct. 2019, 2034 (2020). The Court repeatedly pointed to the distinct nature of the presidency in justifying the existence of presidential immunity, noting that the protection is "rooted in the constitutional tradition of the separation-of-powers doctrine," *Nixon*, 457 U.S. at 749, and "derive[d] in principal part from factors unique to [the President's] constitutional responsibilities and station." *Harlow*, 457 U.S. at 800, n. 17. In fact, the *Nixon* Court expressly acknowledged that "the *most compelling* arguments [for presidential immunity] arise from the Constitution's separation of powers and the Judiciary's historic understanding of that doctrine." *Id.* at 750, n. 31 (emphasis added).

Due to its unique rooting in the constitutional separation-of-powers, presidential immunity (when viable) places the President "beyond the reach of any other department[.]" *Nixon*, 457 U.S. at 754, n. 34 (citation omitted); *see also Harlow*, 457 U.S. at 800, n. 17 ("Suits against other officials...generally do not invoke separation-of-powers considerations to the same extent as suits against the President himself."). Prosecutorial immunity, though analogous to presidential immunity in certain respects, rests in large part on common-law precedent and policy concerns and so does not play as integral a role in preserving the horizontal separation of powers. *See Nixon*, 457 U.S. at 759, n. 2 (Burger, J., concurring) (noting that prosecutorial immunity "derive[s] from the common law and public policy").

This crucial distinction, which the Panel failed to acknowledge, explains why prosecutorial immunity is waivable, while presidential immunity is not. Therefore, the Panel's reasoning that presidential immunity "is to be treated like other forms of immunity" is incongruent with the holdings of *Nixon* and *Harlow*.

**B. The Panel Violated The *Griggs* Divestiture Rule By Permitting The District Court to Retain Jurisdiction Throughout The Pendency Of This Non-Frivolous Appeal**

**i. "Judicial Economy And Efficiency" Is Not An Exception To The *Griggs* Divestiture Rule**

It is well settled that—pursuant to the collateral order doctrine and *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982)—the filing of an appeal from

the denial of immunity divests the district court of jurisdiction to conduct further proceedings until the appeal is resolved. *See Griggs*, 459 U.S. at 58 ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Harlow*, 457 U.S. at 818 ("Until this threshold immunity question is resolved, discovery should not be allowed." ); *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023) (*Griggs* dictates that the district court *must* stay its pre-trial and trial proceedings while the interlocutory appeal…is ongoing." (emphasis added)).

Since this appeal springs from the denial of a presidential immunity defense, *Griggs* dictates that the District Court should have been automatically divested of jurisdiction upon the filing of President Trump's notice of appeal on July 19, 2023. The District Court, however, attempted to invoke the 'dual jurisdiction rule,' an exception to *Griggs* which allows a district court to retain jurisdiction when an appeal is frivolous. *See Carroll v. Trump*, 20-CV-7311-LAK, 2023 WL 5312894, at *7-8 (S.D.N.Y. Aug. 18, 2023) (invoking the "dual jurisdiction rule" and certifying that the instant appeal is "frivolous.").

The Panel declined to adopt the frivolousness holding. A31. Instead, it premised its finding that the District Court was permitted to retain jurisdiction on "considerations of judicial economy and efficiency." *Id.* But no such exception

exists to the automatic divestiture rule. In fact, Supreme Court precedent squarely forecloses it. *See*, *e.g.*, *Coinbase,* 599 U.S. at 744-45 (recognizing *Griggs* divestiture as mandatory and automatic and identifying frivolity as the only exception); *Arthur Andersen LLP v. Carlilse*, 556 U.S. 624, 629 (2009) (recognizing frivolity as the only exception to the *Griggs* rule); *Behrens v. Pelletier*, 516 U.S. 229, 310-311 (1996) (same); *see also United States v. Timewell*, 387 Fed. App'x 23, 25-26 (2d Cir 2010) (noting that, in the Second Circuit, the only recognized exception to the divestiture rule is when "no proper appeal has been taken." (citations omitted)).

The Panel pointed to *United States v. Rodgers*, 101 F.3d 247 (2d Cir. 1996), in support of its contention that "judicial economy and efficiency" are sufficient grounds to permit the District Court's retention of jurisdiction. *Rodgers*, however, is inapposite since it involved "a *plainly unauthorized* notice of appeal which confers on this court the power to do nothing but dismiss the appeal." *Id.* at 252 (emphasis added). Indeed, even the District Court acknowledged that *Rodgers* does not apply since its order was not "patently nonappealable." *Carroll*, 2023 WL 5312894, at *7, n. 22; *see also In re Facebook*, 42 F. Supp. 3d 556, 561 (S.D.N.Y. 2014) ("*Rodgers…*however, is not directly on point as it does not bear directly on cases involving the appeal of a denial of qualified immunity."). Thus, contrary to the Panel's contention, the situation here is not remotely "similar" to that in *Rodgers*,

A32, and "judicial economy and efficiency" is not an established exception to the divestiture rule.

### ii. Since The Panel Declined To Rule On Frivolity, The Dual Jurisdiction Cannot Apply

The Supreme Court has confirmed that a district court's certification of frivolity is not self-effectuating and requires affirmation by the court of appeals. In *Arthur Andersen*, for example, the Court explained that the dual jurisdiction rule requires that the "[a]ppellate court[]…***authorize*** the district court's retention of jurisdiction when an appeal is certified as frivolous." 556 U.S. 624, 629 (2009) (citing *Behrens v. Pelletier*, 516 U.S. 229, 310-311 (1996) (emphasis added)). This notion was recently reaffirmed in *Coinbase*, wherein the Supreme Court identified the "robust tools to…deter frivolous interlocutory appeals," including the court of appeals' ability to "authorize" a district court's finding of frivolity, to "summarily affirm" that an appeal is frivolous, or to simply "dismiss the interlocutory appeal as frivolous." *Coinbase*, 599 U.S. at 745 (citing *Arthur Anderson*, *supra*). Notably, these options all require affirmative action by the court of appeals, further confirming that the district court's certification of frivolity is not self-effectuating.

President Trump twice asked this Court to address the District Court's finding of frivolity, but the issue remains unaddressed. First, in his initial stay application, President Trump asked the motions panel to divest the District Court of jurisdiction

since the appeal is plainly not frivolous.[2] The motions panel determined that the divesture question would be more appropriately addressed by the Panel[3] and declined to rule on the issue in its September 13, 2023 decision, *see* A37-38. President Trump then re-raised his divestiture argument to the Panel in his appellate briefings.[4] The Panel, however, similarly declined to answer the question of "whether [the instant] appeal is frivolous." A31. In other words, to date, the Second Circuit has not addressed the District Court's frivolity finding at all, much less "authorize[d]" or "affirmed" it.[5] *Coinbase*, 599 U.S. at 745. On this basis alone, the automatic divestiture rule applies.

Further, it is beyond dispute that the instant appeal is non-frivolous. At oral argument, the motions panel acknowledged that the appeal "raise[s] a non-frivolous argument."[6] Likewise, the Panel admitted that "whether presidential immunity is waivable" is a "vexing question of first impression." A5. Meanwhile, Plaintiff has not sought to dismiss the appeal as frivolous, seek sanctions, or make use of any of the other "robust tools" available to victims of frivolous appeals. *Coinbase*, 599 U.S.

---

[2] *See* No. 23-1045, ECF 27 & 54-1.

[3] *See* Oral Arg. Audio Recording (9/12/23) at 14:52-17:33.

[4] *See* No. 23-1045, ECF 92 & 113.

[5] After the Opinion was entered, President Trump sought a stay of mandate and trial while Plaintiff cross-moved for an order "confirming that the district court [] maintains jurisdiction to proceed with the case." A39. The Panel denied both motions, further confusing the issue.

[6] *See* Oral Arg. Audio Recording (9/12/23) at 23:30-40.

at 745. Moreover, for the reasons described above, President Trump has advanced numerous compelling arguments with respect to the novel questions at issue in this appeal. Therefore, it is incontrovertible that this appeal is non-frivolous.

## III. A Stay Of Proceedings Is Necessary To Protect President Trump's Rights

This case is scheduled to proceed to trial in less than two weeks, on January 16, 2024. As explained above in Section II(A), under *Griggs* and *Coinbase*, an automatic stay should have been instituted upon the filing of President Trump's appeal on July 19, 2023, but it was not. Since then, President Trump has repeatedly sought to obtain a decision as to whether the instant appeal is frivolous—which it plainly is not—but has been consistently stonewalled by this Court. The Supreme Court has confirmed that the divesture rule is *mandatory*, not discretionary, and President Trump is therefore entitled to have district court proceedings stayed until the mandate issues, at a minimum. *See Coinbase*, *supra*, at 738.

Further, if trial is permitted to proceed forward while President Trump seeks en banc review, his right to immunity will be irreparably damaged. *See, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (immunity is "effectively lost if a case is erroneously permitted to go to trial."). The forfeiture of an immunity defense is significant in any case, but the circumstances are especially urgent here, where—*for the first time in history*—a President has been involuntarily stripped of the "protection[] that safeguard[s] [his] ability to perform his vital functions." *Trump v.*

*Vance*, 140 S. Ct. 2412, 2425 (2020). In this unique and unprecedented scenario, the public's interest in obtaining final resolution on this question of historical and constitutional significance is sufficient to justify a stay of the upcoming trial. *See*, *e.g.*, *Will v. Haddock*, 546 U.S. 345, 346 (2006) (identifying several "value[s] of a high order" which "support [] the interest in avoiding trial," including "honoring the separation of powers" and "preserving the efficiency of government and the initiative of its officials."). Any resulting delay to Plaintiff is immaterial: "the needs of a system of government sometimes must outweigh the right of individuals to collect damages." *Nixon*, 457 U.S. at 759, n. 2 (Burger, J., concurring).

In view of the foregoing, there is compelling and sufficient cause to grant a stay of proceedings pending consideration of the instant petition.

## <u>CONCLUSION</u>

For the reasons stated herein, this petition for en banc rehearing should be granted. Furthermore, the Court should enter a stay of district court proceedings pending consideration and resolution of this petition. Given the time-sensitive nature of this application, President Trump respectfully requests a decision as to whether rehearing (and a stay) will be granted on or before January 8, 2024.

Date: January 2, 2024          Respectfully Submitted,
     New York, New York

                                   */s/ Michael T. Madaio*
                                   Michael T. Madaio, Esq.
                                   Alina Habba, Esq.
                                   HABBA MADAIO & ASSOCIATES LLP
                                   1430 U.S. Highway 206, Suite 240
                                   Bedminster, New Jersey 07921
                                        -and-
                                   112 West 34th Street, 17th and 18th Floors
                                   New York, New York 10120
                                   Phone: (908) 869-1188
                                   E-mail: mmadaio@habbalaw.com
                                   *Attorneys for Defendant-Appellant,*
                                   *President Donald J. Trump*

# ADDENDUM

# **ADDENDUM**

## **Table of Contents**

1. Panel Opinion dated December 13, 2023 ...........................................................A1

2. Judgment dated December 13, 2023 .................................................................A36

2. Motion Order dated September 13, 2023...........................................................A37

4. Panel Order dated December 28, 2023 .............................................................A39

# In the
# United States Court of Appeals
## for the Second Circuit

_____

AUGUST TERM 2023

Nos. 23-1045-cv (L) & 23-1146-cv (Con)

E. JEAN CARROLL,
*Plaintiff-Counter-Defendant-Appellee,*

v.

DONALD J. TRUMP, in his personal capacity,
*Defendant-Counter-Claimant-Appellant.*

_____

On Appeal from the United States District Court
for the Southern District of New York

_____

ARGUED: OCTOBER 23, 2023
DECIDED: DECEMBER 13, 2023

_____

Before: CABRANES, CHIN, and KAHN, *Circuit Judges.*

_____

CERTIFIED COPY ISSUED ON 12/13/2023

Ordinarily, defendants are deemed to have waived or forfeited defenses that they did not raise at the outset of the litigation. But defenses based on subject-matter jurisdiction—the courts' statutory or constitutional power to adjudicate the case—are nonwaivable. Defendants can raise such defenses at any stage in the litigation.

Presidential immunity is a defense that entitles the President to absolute immunity from damages liability for acts within the outer perimeter of his official responsibilities. This case presents a vexing question of first impression: whether presidential immunity is waivable. We answer in the affirmative and further hold that Donald J. Trump ("Defendant") waived the defense of presidential immunity by failing to raise it as an affirmative defense in his answer to E. Jean Carroll's ("Plaintiff's") complaint, which alleged that Defendant defamed her by claiming that she had fabricated her account of Defendant sexually assaulting her in the mid-1990s.

Accordingly, we **AFFIRM** the July 5, 2023 order of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*) denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense and denied his request for leave to amend his answer to add presidential immunity as a defense. We likewise **AFFIRM** the District Court's August 7, 2023 order insofar as it struck Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. We **DISMISS** for lack of appellate jurisdiction the appeal of the District Court's July 5, 2023 order insofar as it determined that Defendant's statements about Plaintiff were defamatory per se.

Finally, we **REMAND** the case to the District Court for further proceedings consistent with this opinion.

————————

> JOSHUA MATZ (Kate Harris, Roberta A. Kaplan, Trevor W. Morrison, *on the brief*), Kaplan Hecker & Fink LLP, New York, NY, *for Plaintiff-Counter-Defendant-Appellee* E. Jean Carroll.
>
> MICHAEL T. MADAIO (Alina Habba, *on the brief*), Habba Madaio & Associates LLP, Bedminster, NJ, *for Defendant-Counter-Claimant-Appellant* Donald J. Trump.

————————

José A. Cabranes, *Circuit Judge*:

Ordinarily, defendants are deemed to have waived or forfeited defenses that they did not raise at the outset of the litigation.[1] But

---

[1] *See Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 117 (2d Cir. 2023). "While the terms 'waiver' and 'forfeiture' are often used interchangeably because they have similar effects, they have slightly different meanings." *Id*. at 117 n.10. "The term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right. Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate." *Doe v. Trump Corp.*, 6 F.4th 400, 409 n.6 (2d Cir. 2021) (quotation marks and comma omitted). E.

defenses based on subject-matter jurisdiction—"the courts' statutory or constitutional power to adjudicate the case"[2]—are nonwaivable. Defendants can raise such defenses "at any stage in the litigation."[3]

Presidential immunity is a defense that stems from "the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history," and entitles the President to "absolute . . . immunity from damages liability for acts

---

Jean Carroll ("Plaintiff"), Donald J. Trump ("Defendant"), and the District Court refer to Defendant's failure to raise presidential immunity as "waiver." For purposes of this consolidated appeal, whether Defendant forfeited rather than waived presidential immunity matters not. Thus, "[w]e use the term ['waiver'] in this opinion for ease of discussion," but we express no view on whether Defendant intended to relinquish his presidential immunity defense, "which is a question of fact reserved for the district court." *Kaplan*, 77 F.4th at 117 n.10; *see, e.g.*, *LCS Grp., LLC v. Shire Dev. LLC*, No. 20-2319, 2022 WL 1217961, at *5 n.2 (2d Cir. Apr. 26, 2022) (summary order) ("Although it may be more accurate to refer to [Appellant] as having forfeited, rather than waived, many of the arguments it raises here, for convenience we refer to both their action and inaction here in terms of 'waiver.'").

[2] *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 92 (2017) (quotation marks omitted).

[3] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

within the outer perimeter of his official responsibilities."[4] For example, the Supreme Court held in *Nixon v. Fitzgerald* that presidential immunity protected former President Richard Nixon from a lawsuit by an ex-Air Force employee who alleged that Nixon fired him in retaliation for testifying before Congress about cost overruns.[5] Conversely, the Court held in *Clinton v. Jones* that presidential immunity did not shield President Clinton from civil liability for actions allegedly taken when he was Governor of Arkansas because they were not official presidential acts.[6]

This case presents a vexing question of first impression: whether presidential immunity is waivable. We answer in the affirmative and further hold that Donald J. Trump ("Defendant") waived the defense of presidential immunity by failing to raise it as an affirmative defense

---

[4] *Nixon v. Fitzgerald*, 457 U.S. 731, 749, 756 (1982) (quotation marks omitted). Other Government officials are likewise protected by absolute immunity under certain circumstances. For example, prosecutorial immunity is a form of absolute immunity that shields "[a] prosecutor acting in the role of an advocate in connection with a judicial proceeding . . . for all acts 'intimately associated with the judicial phase of the criminal process.'" *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). And judges are entitled to absolute judicial immunity "for acts 'committed within their judicial discretion.'" *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985)).

[5] *See Nixon*, 457 U.S. at 733-40, 756-58.

[6] *Clinton v. Jones*, 520 U.S. 681, 694-95 (1997).

in his answer to E. Jean Carroll's ("Plaintiff's") complaint, which alleged that Defendant defamed her by claiming that she had fabricated her account of Defendant sexually assaulting her in the mid-1990s.

Accordingly, we **AFFIRM** the July 5, 2023 order of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*) denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense and denied his request for leave to amend his answer to add presidential immunity as a defense. We likewise **AFFIRM** the District Court's August 7, 2023 order insofar as it struck Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. We **DISMISS** for lack of appellate jurisdiction the appeal of the District Court's July 5, 2023 order insofar as it determined that Defendant's statements about Plaintiff were defamatory per se. Finally, we **REMAND** the case to the District Court for further proceedings consistent with this opinion.

## I.    BACKGROUND

The relevant facts in this appeal are undisputed. We summarize them below.

## A. Factual Background

On June 21, 2019, Plaintiff publicly accused Defendant of sexually assaulting her in the mid-1990s.[7] Defendant, who was President of the United States at the time of the accusations, denied Plaintiff's claims in a series of public statements. In the first, released that same day, he claimed that "it never happened," he "never met" Plaintiff, and that "[s]he is trying to sell a new book—that should indicate her motivation."[8] The next day, he stated that "[t]his is a woman who has also accused other men of things . . . It is a totally false accusation."[9]

On November 4, 2019, Plaintiff responded by suing Defendant for defamation in New York State Supreme Court. Defendant filed his

---

[7] *See* E. Jean Carroll, *Hideous Men: Donald Trump Assaulted Me in a Bergdorf Goodman Dressing Room 23 Years Ago. But He's Not Alone on the List of Awful Men in My Life*, THE CUT (June 21, 2019), https://www.thecut.com/2019/06/donald-trump-assault-e-jean-carroll-other-hideous-men.html [https://perma.cc/HX9T-8MPK].

[8] Appellant's Appendix ("A") 573.

[9] *Id.* at 580. On June 24, 2019, Defendant further stated that "she's not my type" and that it "never happened." *Id.* at 590. As of November 15, 2023, Defendant's June 24 statement is no longer the subject of Plaintiff's defamation claim, although Plaintiff contends it remains relevant to the question of punitive damages. *See* Def. 28(j) Letter, *Carroll v. Trump*, No. 23-1045 (Nov. 17, 2023), ECF No. 121; Pl. Letter, *Carroll v. Trump*, No. 23-1045 (Nov. 20, 2023), ECF No. 124. We take judicial notice of this development, *see Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992), but it does not alter our analysis.

answer on January 23, 2020. On September 8, 2020, the United States removed the case to the United States District Court for the Southern District of New York pursuant to the Westfall Act.[10]

## B. Procedural Background

On December 22, 2022, Defendant moved for summary judgment.[11] In his reply brief, filed on January 19, 2023, he raised for the first time the argument that presidential immunity barred liability.

---

[10] The Westfall Act immunizes federal employees acting within the scope of their office or employment from tort liability. *See* 28 U.S.C. § 2679(b)(1). Under the Act, the United States may remove a state court civil case to federal court upon certification by the Attorney General that the employee was acting within the scope of his employment at the time of the alleged incident. *See id.* § 2679(d)(2); *Osborn v. Haley*, 549 U.S. 225, 229-30 (2007). Whether the Westfall Act immunizes Defendant is not before us today. *Cf. Carroll v. Trump*, 66 F.4th 91 (2d Cir. 2023) (recounting the procedural history of this case's Westfall Act dispute and remanding to the District Court). After we remanded to the District Court, the Government decided not to issue Defendant a new Westfall Act certification in light of the filing of Plaintiff's amended complaint.

[11] One month before Defendant moved for summary judgment, Plaintiff filed a separate lawsuit against Defendant for sexual assault and defamation. The defamation claim arose out of an October 2022 statement by Defendant denying Plaintiff's assault allegation. *See* Complaint, *Carroll v. Trump*, No. 22-cv-10016 ("*Carroll II*") (S.D.N.Y. Nov. 24, 2022). In May 2023, the *Carroll II* jury awarded Plaintiff $5 million in damages. The verdict is the subject of a separate appeal currently pending before this Court. *See Carroll II, appeal docketed*, No. 23-793 (2d Cir. May 11, 2023).

A8

On July 5, 2023, the District Court denied Defendant's motion for summary judgment after determining that Defendant waived presidential immunity and denied Defendant's request for leave to amend his answer to add presidential immunity as a defense ("July 5 Order").[12] The Court denied Defendant's request for leave to amend on two independent grounds: first, that the request was futile, and second, that Defendant unduly delayed in raising the defense and granting the request would prejudice Plaintiff.[13] The Court also rejected Defendant's argument that his statements were not defamatory per se.[14] Defendant appealed the July 5 Order on July 19, 2023.

Meanwhile, on May 22, 2023, Plaintiff filed an amended complaint that added, *inter alia*, more statements by Defendant alleging that Plaintiff's accusations were false and politically motivated. Defendant filed his answer to Plaintiff's amended complaint on June 27, 2023. The amended answer for the first time raised presidential immunity as an affirmative defense. On August 7, 2023, the District Court struck Defendant's presidential immunity defense from his amended answer on the ground that it had been

---

[12] Memorandum Opinion Denying Defendant's Motion for Summary Judgment (Corrected), *Carroll v. Trump* ("*Carroll I*"), No. 20-cv-7311, 2023 WL 4393067 (S.D.N.Y. July 5, 2023) ("July 5 Order").

[13] *Id.* at *9-13.

[14] *Id*. at *13-14.

waived and, even if not, "would have been insufficient as a defense" ("August 7 Order").[15] On August 10, 2023, Defendant appealed the August 7 Order.

Defendant sought a stay from the District Court, arguing that his appeal of the District Court's July 5 Order, which rejected Defendant's presidential immunity defense, divested the District Court of jurisdiction. On August 18, 2023, the District Court denied Defendant's stay motion upon determining his appeal to be frivolous.[16] Defendant then sought an emergency stay from our Court, which a motions panel denied on September 13, 2023. The same day, the motions panel ordered the consolidation of Defendant's appeals of the July 5 Order and the August 7 Order and set an expedited briefing schedule.

## II. DISCUSSION

This case concerns appeals from two related orders by the District Court. The July 5 Order denied Defendant's motion for

---

[15] Memorandum Opinion Granting Plaintiff's Motion to Dismiss Defendant's Counterclaim and Certain Purported Affirmative Defenses, *Carroll I*, No. 20-cv-7311, 2023 WL 5017230, at *9 (S.D.N.Y. Aug. 7, 2023) ("August 7 Order"). The August 7 Order also dismissed Defendant's counterclaim that Plaintiff defamed him by accusing him of rape. *Id*. at *5-8. The District Court's dismissal of Defendant's counterclaim is not before us today.

[16] Memorandum Opinion Denying Defendant's Motion to Stay, *Carroll I*, No. 20-cv-7311, 2023 WL 5312894, at *7-8 (S.D.N.Y. Aug. 18, 2023).

summary judgment on the ground that Defendant waived his presidential immunity defense and further denied Defendant's request for leave to amend his answer to add presidential immunity as an affirmative defense. The August 7 Order struck Defendant's affirmative defense of presidential immunity from his answer to Plaintiff's amended complaint on the ground that Defendant had already waived this defense.

We hold that presidential immunity is waivable and that Defendant waived this defense.[17] Thus, the District Court did not err in its order denying Defendant's motion for summary judgment, nor did it err, much less "abuse its discretion," in denying his belated request for leave to amend his answer to add presidential immunity as a defense.[18] We also hold that the District Court did not err in striking Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint.[19] Nor did the District Court err in retaining jurisdiction after Defendant filed his notice of appeal on July 19, 2023.[20] Finally, we hold that we lack appellate jurisdiction to consider whether Defendant's statements were defamatory per se.[21]

---

[17] *See* Section II.A, *post*.

[18] *See* Sections II.A-II.B, *post*.

[19] *See* Section II.C, *post*.

[20] *See* Section II.D, *post*.

[21] *See* Section II.E, *post*.

### A. Whether Defendant Waived Presidential Immunity[22]

Is presidential immunity waivable? And if so, did Defendant waive it? The answer to both questions is yes.

### 1. Whether Presidential Immunity Is Waivable

Defendant argues that presidential immunity is a jurisdictional defense and is thus nonwaivable.[23] We disagree. The Supreme Court recognized in *Nevada v. Hicks* that "[t]here is no authority whatever for the proposition that absolute- and qualified-immunity defenses

---

[22] We review the District Court's determination that Defendant waived his presidential immunity defense for "abuse of discretion." *See Amara v. Cigna Corp.*, 53 F.4th 241, 256 (2d Cir. 2022). We review the District Court's denial of summary judgment and its determination that presidential immunity can be waived *de novo*. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012); *Berg v. Kelly*, 897 F.3d 99, 105 (2d Cir. 2018). We have appellate jurisdiction under the collateral order doctrine to review the District Court's determination that Defendant is not entitled to absolute immunity. *See Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) ("As the existence of absolute immunity protects an official not only from liability but also from suit, the validity of the defense should be determined at an early stage. Hence, an interlocutory order rejecting the defense is immediately appealable under the collateral order doctrine to the extent that the rejection turned on an issue of law.").

[23] *See* Def. Br. at 12-34; *see also* notes 1-6 , *ante* (explaining concepts of waiver and presidential immunity).

pertain to the court's jurisdiction."[24] And we have repeatedly distinguished absolute immunity defenses from defenses based on subject-matter jurisdiction.[25]

Rather than acknowledge *Hicks* or our precedents, Defendant points to scattered references to "jurisdiction" in Supreme Court cases involving presidential immunity.[26] But as we have recently been reminded by the Supreme Court, "[t]he mere fact that [the Supreme] Court previously described something without elaboration as

---

[24] 533 U.S. 353, 373 (2001); *see also Smith v. Scalia*, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014) (Jackson, *J.*) ("[A]bsolute judicial immunity is a non-jurisdictional bar."), *aff'd*, No. 14-cv-5180, 2015 WL 13710107 (D.C. Cir. 2015). Qualified immunity shields officials from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Absolute immunity, by contrast, "confers complete protection from civil suit." *Tulloch v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995). The parties do not dispute that presidential immunity is a form of absolute, rather than qualified, immunity.

[25] *See, e.g., Chen v. Garland*, 43 F.4th 244, 252 n.6 (2d Cir. 2022); *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004); *see also Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 154 n.3 (2d Cir. 2006) (holding absolute immunity defense to be waived because not adequately preserved for appellate review).

[26] *See* Def. Br. at 15-16, 19, 22, 31 (quoting *Mississippi v. Johnson*, 71 U.S. 475, 500-01 (1867); *Nixon*, 457 U.S. at 754; and *Clinton*, 520 U.S. at 710).

jurisdictional . . . does not end the inquiry."[27] We must ask if the prior decision addressed whether the provision or defense is "'technically jurisdictional'—whether it truly operates as a limit on a court's subject-matter jurisdiction—and whether anything in the decision 'turn[ed] on that characterization.'"[28] Accordingly, "[i]f a decision simply states that 'the court is dismissing "for lack of jurisdiction" when some threshold fact has not been established,' it is understood as a 'drive-by jurisdictional ruling' that receives no precedential effect."[29]

None of the cases on which Defendant relies indicate that presidential immunity is jurisdictional—indeed, quite the opposite. Defendant relies primarily on the following passage in *Nixon*:

> [A] court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch. When judicial action is needed to serve broad public interests . . . the exercise of jurisdiction has been held warranted. In the case of this

---

[27] *Wilkins v. United States*, 598 U.S. 152, 159-60 (2023) (quotation marks omitted).

[28] *Id.* at 160 (quoting *Arbaugh*, 546 U.S. at 512) (some quotation marks omitted).

[29] *Id.* (quoting *Arbaugh*, 546 U.S. at 511) (alteration adopted).

merely private suit for damages based on a
President's official acts, we hold it is not.[30]

But *Nixon* hurts, not helps, Defendant's case. The passage quoted
above follows a threshold analysis of whether the Supreme Court had
subject-matter jurisdiction over the dispute.[31] Pursuant to the usual
practice in the federal courts,[32] only once assured of its subject-matter
jurisdiction did the Supreme Court proceed to the "merits"—*i.e.*, to
whether the President was entitled to immunity.[33]

Nor do the passing references to "jurisdiction" in *Mississippi v.
Johnson* or in *Clinton v. Jones* support Defendant's position. In *Johnson*,
the question was whether a state could obtain an injunction to prevent

---

[30] *Nixon*, 457 U.S. at 754 (citations omitted); *see* Def. Br. at 19, 22-23, 30-31, 33.

[31] *Nixon*, 457 U.S. at 741-43; *see also id.* at 741 ("Before addressing the merits
of this case, we must consider two challenges to our jurisdiction.").

[32] *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("We first address
whether the Court of Appeals had subject-matter jurisdiction . . . ."); *In re Clinton
Nurseries, Inc.*, 53 F.4th 15, 22 (2d Cir. 2022) ("At the outset, we must consider
whether this Court has subject matter jurisdiction . . . ."); *Lanier v. Bats Exch., Inc.*,
838 F.3d 139, 146 (2d Cir. 2016) ("As a threshold matter, we must first satisfy
ourselves that we have subject matter jurisdiction."); *Rogers v. Petroleo Brasileiro,
S.A.*, 673 F.3d 131, 137 (2d Cir. 2012) ("Notwithstanding our grave concerns
regarding the merits of the complaint, we proceed, as we must, first to determine
issues of subject matter jurisdiction.").

[33] *Nixon*, 457 U.S. at 741, 743 n.23.

the President from carrying out an Act of Congress, not whether a President is liable for damages in a private civil suit.[34] And like *Nixon*, *Clinton* first held that the Supreme Court had subject-matter jurisdiction before proceeding to the immunity question.[35] Neither *Nixon* nor *Clinton* addressed whether presidential immunity is "technically jurisdictional," nor did "anything in the decision[s] turn[] on that characterization."[36] Thus, *Clinton*'s reference to "jurisdiction"—the Court's determination that "[t]he Federal District Court has jurisdiction to decide this case"[37]—is, like *Nixon*'s, best characterized as a "drive-by jurisdictional ruling" that "should be accorded no precedential effect" because it ultimately does not bear on the question of whether presidential immunity is jurisdictional.[38]

All in all, Defendant provides no case that turns on whether presidential immunity is jurisdictional, much less one holding that it *is* jurisdictional, and *Nixon*—described by Defendant's counsel at oral

---

[34] *See generally Johnson*, 71 U.S. 475.

[35] *See Clinton*, 520 U.S. at 685.

[36] *Wilkins*, 598 U.S. at 160 (quotation marks omitted).

[37] *Clinton*, 520 U.S. at 710.

[38] *Wilkins*, 598 U.S. at 160-61 (quotation marks omitted and alteration adopted).

A16

argument as the "main case" and "the only binding precedent" on presidential immunity—points in the opposite direction.[39]

Next, Defendant contends that "the separation-of-powers doctrine" renders presidential immunity nonwaivable because "an impermissible inter-branch conflict will always arise when a court seeks to impute civil liability on a President for the performance of his official acts."[40] But separation-of-powers considerations militate in favor of, not against, recognizing presidential immunity as waivable. A President's autonomy should be protected; thus, a President *should* be able to litigate if he chooses to do so. Indeed, at least one President has declined to invoke presidential immunity, opting instead to settle two civil suits out of court.[41] Recognizing presidential immunity as a jurisdictional defense would, the District Court observed, "risk

---

[39] Oral Arg. Audio Recording at 4:14-22; *cf. Blassingame v. Trump*, Nos. 22-5069, 22-7030, 22-7031, 2023 WL 8291481 (D.C. Cir. Dec. 1, 2023) (affirming district court's order denying Defendant's presidential immunity defense without analyzing whether the defense is jurisdictional).

[40] Def. Br. at 12-13.

[41] *See* Answer to Complaint, *Bailey v. Kennedy,* No. 757,200 (Cal. Super. Ct. Jan. 19, 1961); Answer to Complaint, *Hills v. Kennedy,* No. 757,201 (Cal. Super. Ct. Jan. 19, 1962); *see also Clinton*, 520 U.S. at 692 (summarizing the Kennedy litigation). In addition, lawsuits filed against Presidents Franklin D. Roosevelt and Harry S. Truman were dismissed without, it appears, either President invoking presidential immunity. *See Jones v. Clinton*, 72 F.3d 1354, 1362 n.10 (8th Cir. 1996), *aff'd*, 520 U.S. 681.

encroachment by the judiciary into the president's domain by eliminating the president's ability to choose" whether to litigate.[42]

Moreover, avoiding undue judicial intrusion on the executive branch undergirds the doctrines of both prosecutorial immunity and presidential immunity. That said, Defendant does not dispute that prosecutorial immunity is waivable. Rather, he argues that the President's unique constitutional role distinguishes presidential immunity from other forms of absolute immunity such as prosecutorial immunity and judicial immunity.[43] But as Defendant acknowledges,[44] the Supreme Court has made clear that absolute immunity for prosecutors and judges, on the one hand, and presidential immunity on the other, are closely related. "As is the case with prosecutors and judges," the Court stated in *Nixon*, "a President must concern himself with matters likely to 'arouse the most intense feelings.'"[45] And the Court has recently reinforced the "careful analogy" it drew in *Nixon*, reasoning that "a President, like [judges and prosecutors], must . . . not be made 'unduly cautious in the discharge

---

[42] July 5 Order, *Carroll I*, 2023 WL 4393067, at *8.

[43] Def. Br. at 28-30.

[44] *Id.* at 28-29.

[45] *Nixon*, 457 U.S. at 751-52 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)); *see also id.* at 758 ("For the President, as for judges and prosecutors, absolute immunity merely precludes a particular private remedy for alleged misconduct in order to advance compelling public ends.").

of [his official] duties' by the prospect of civil liability for official acts."[46]

Nor do the Court's references in *Nixon* and *Harlow v. Fitzgerald*—*Nixon*'s companion case—to the President's unique status in comparison with other Government officials support Defendant's position.[47] Those passages contrasted the President to other *executive* officials—such as presidential aides and Cabinet officers—to conclude that, unlike the qualified immunity of these lower-level executive officials, presidential immunity is absolute.[48] And although the Supreme Court in *Nixon* recalled the "special solicitude due to claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers," the passage in question concerned not whether presidential immunity was waivable, but whether the

---

[46] *Trump v. Vance*, 140 S. Ct. 2412, 2426 (2020) (quoting *Nixon*, 457 U.S. at 752 n.32).

[47] *See Nixon*, 457 U.S. at 750 ("The President's unique status under the Constitution distinguishes him from other executive officials."); *Harlow v. Fitzgerald*, 457 U.S. 800, 811 n.17 (1982) ("As we explained in [*Nixon*], the recognition of absolute immunity for all of a President's acts in office derives in principal part from factors unique to his constitutional responsibilities and station. Suits against other officials—including Presidential aides—generally do not invoke separation-of-powers considerations to the same extent as suits against the President himself.").

[48] *Nixon*, 457 U.S. at 750; *Harlow*, 457 U.S. at 811 & n.17. For the difference between qualified immunity and absolute immunity, see note 24, *ante*.

district court's order rejecting Nixon's immunity defense was a "serious and unsettled" question that could be raised on interlocutory appeal.[49]

Finally, Defendant argues that Article III of the Constitution, which vests judicial power in the federal courts, makes presidential immunity nonwaivable. He reasons as follows. First, violations of Article III—for example, the improper exercise of federal judicial power by a non-Article III entity—are not waivable. Next, separation-of-powers considerations inform both Article III and presidential immunity. Thus, presidential immunity is not waivable. But apart from *Nixon* (discussed above), none of the cases Defendant draws to our attention concern immunity at all, much less presidential immunity.[50] More to the point, it is not accurate to assert that

---

[49] *Nixon*, 457 U.S. at 743 (quotation marks omitted).

[50] *See* Def. Br. at 23-27 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986); *Lo Duca v. United States*, 93 F. 3d 1100 (2d Cir. 1996); *Austin v. Healey*, 5 F.3d 598 (2d Cir. 1993); *Samuels, Kramer & Co. v. Comm'r*, 930 F.2d 975 (2d Cir. 1991); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 682 (2015); *Kuretski v. Comm'r*, 755 F.3d 929, 937 (D.C. Cir. 2014); *Nixon*, 457 U.S. 731; *Nixon*, 457 U.S. 731 (Burger, C.J., concurring); *Johnson*, 71 U.S. 475).

separation-of-powers defenses or arguments are *ipso facto* nonwaivable.[51]

To summarize: notwithstanding scattered references to "jurisdiction" in some presidential immunity cases, the Supreme Court has indicated that immunity defenses are not jurisdictional, and that presidential immunity is to be treated like other forms of immunity that Defendant does not dispute are waivable. Moreover, *Nixon*—the leading presidential immunity case—treats presidential immunity as nonjurisdictional. Finally, recognizing presidential immunity as waivable reinforces, not undermines, the separation of powers and the President's decisionmaking authority by affording the President an opportunity to litigate if he so chooses. Accordingly, we hold that presidential immunity is waivable.

---

[51] *See Wellness Int'l Network*, 575 U.S. at 682 n.11 ("The proposition that legal defenses based upon doctrines central to the courts' structural independence can never be waived simply does not accord with our cases.") (alteration adopted) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 231 (1995)); *United States v. Donziger*, 38 F.4th 290, 303 (2d Cir. 2022) ("[S]tructural constitutional claims . . . have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.") (quoting *Freytag v. Comm'r*, 501 U.S. 868, 893-94 (1991) (Scalia, *J.*, concurring in part and concurring in judgment)), *cert. denied*, 143 S. Ct. 868 (2023); *United States v. Nelson*, 277 F.3d 164, 206 (2d Cir. 2002) ("[W]e do not imply that all claims of structural error . . . are unwaivable.").

### 2. Whether Defendant Waived Presidential Immunity

Having determined that presidential immunity is waivable, we reach the question: Did Defendant waive his presidential immunity defense? We hold that he did.

Defendant filed his answer to Plaintiff's original complaint in New York state court in January 2020. But the answer did not invoke presidential immunity. The District Court thus determined that Defendant had waived this defense, a holding Defendant does not challenge in this appeal.[52] Indeed, Defendant's counsel conceded at oral argument that assuming the defense of presidential immunity is waivable, Defendant had waived that defense.[53]

Accordingly, the District Court did not err in denying Defendant's motion for summary judgment on the ground that he had waived his presidential immunity defense. We turn next to whether the District Court correctly rejected his attempt to revive it—first in his request for leave to amend his answer, then in his answer to Plaintiff's amended complaint.

---

[52] *See* July 5 Order, *Carroll I,* 2023 WL 4393067, at *5 n.18 ("It accordingly is clear that Mr. Trump does not dispute that if absolute presidential immunity can be waived, he in fact waived it in this case."). *See generally* Def. Br.

[53] Oral Arg. Audio Recording at 9:59-10:33, 11:53-12:18.

## B. Defendant's Request for Leave to Amend

"We review a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo*."[54] The District Court did not err, much less "abuse its discretion,"[55] when it denied Defendant's request for leave to amend his answer to add the defense of presidential immunity on grounds of undue delay and prejudice.[56]

---

[54] *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (quotation marks omitted).

[55] "'[A]buse of discretion' . . . is a nonpejorative term of art" that "implies no misconduct on the part of the district court." *United States v. Bove*, 888 F.3d 606, 607 n.1 (2d Cir. 2018). "The term simply describes the circumstance in which a district court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *Id*. (quotation marks omitted and alterations adopted).

[56] That the amendment would have been futile constituted an independent basis for the District Court's decision. *See* July 5 Order, *Carroll I*, 2023 WL 4393067, at *9-11. Because we affirm the District Court's determination on grounds of undue delay and undue prejudice, we do not reach the question whether the proposed amendment would have been futile.

A23

First, Defendant unduly delayed in raising presidential immunity as a defense.[57] Three years passed between Defendant's answer and his request for leave to amend his answer. A three-year delay is more than enough, under our precedents, to qualify as "undue."[58] And Defendant's excuse for not timely raising the defense—that the question of whether the Westfall Act immunized Defendant was pending before the District Court, this Court, and the District of Columbia Court of Appeals between September 2020 and June 2023—is unpersuasive.[59] Defendant does not explain how the

[57] Black's Law Dictionary defines "undue" as "[e]xcessive or unwarranted." *Undue*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Groff v. DeJoy*, 600 U.S. 447, 469 (2023) (holding that, in the context of the phrase "undue hardship," "the modifier 'undue' means . . . 'excessive' or 'unjustifiable'") (quoting RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1547 (1966)).

[58] *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (1 year and 9 months); *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (2 years and 3.5 months); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (2 years and 9 months); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (3 years); *see also City of New York v. Grp. Health Inc.*, 649 F.3d 151, 158 (2d Cir. 2011) (3 years and 2 months). To be sure, we have allowed amendments to pleadings when similar or longer lengths of time have passed. *See Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) ("more than four years"); *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases). But those cases did not involve a finding of prejudice to the non-moving party.

[59] *See* note 10, *ante* (describing the Westfall Act); *Carroll v. Trump*, 66 F.4th 91 (2d Cir. 2023) (discussing the procedural history of this case's Westfall Act dispute).

A24

Westfall Act dispute precluded him from raising a defense of presidential immunity. Indeed, Defendant first raised presidential immunity in January 2023—that is, during the pendency of the Westfall Act dispute.

We next conclude that Defendant's delay unduly prejudiced Plaintiff. "Prejudice," like "abuse of discretion," is a legal term of art.[60] In gauging whether a proposed amendment would prejudice a party, "we consider, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute."[61] Although "mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend," "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice."[62] Finally, requests to amend that come at a late stage of the litigation, after discovery has closed and a

---

[60] *See Prejudice*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "prejudice" as "[d]amage or detriment to one's legal rights or claims"); *see also* note 55, *ante* ("defining abuse of discretion").

[61] *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quotation marks omitted).

[62] *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (quotation marks omitted and alterations adopted); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quotation marks omitted).

motion for summary judgment has been filed, are more likely to be prejudicial.[63]

Had Defendant raised presidential immunity before discovery closed, Plaintiff claims, she would have engaged in discovery on whether Defendant's actions fell within his official duties.[64] First, Plaintiff would have asked Defendant for more detail on the process through which he issued and prepared the June 2019 statements, including how the process compared to his pre- and post-presidential processes.[65] Second, Plaintiff would have sought third-party discovery from White House personnel allegedly involved in preparing and issuing the statements.[66] Third, Plaintiff would have sought expert testimony from former White House officials and requested internal White House documents from the National Archives regarding former presidents' processes for issuing statements denying wrongdoing.[67] Plaintiff's counsel represents that they avoided doing so because "the risk of prolonging the litigation and creating complex executive privilege fights did not seem worth it to us, as measured against the

---

[63] *See AEP Energy Servs.*, 626 F.3d at 727.

[64] Pl. Br. at 45; Oral Arg. Audio Recording at 26:06-30:02.

[65] Oral Arg. Audio Recording at 26:06-27:44.

[66] *Id.* at 27:45-28:22.

[67] *Id.* at 28:23-29:20.

absence of an absolute immunity defense, which Mr. Trump had not raised."[68]

Against all this, Defendant contends that the discovery Plaintiff would have pursued regarding presidential immunity (whether the statements fell within the President's official duties) was already explored by Plaintiff in the discovery she pursued regarding the Westfall Act (whether the statements fell within the President's scope of employment).[69] But as counsel for Defendant concedes, the two tests are different.[70] The Westfall Act's scope-of-employment test is subjective, while presidential immunity's official-duties test is objective.[71] And Defendant has no response to Plaintiff's contention that Defendant's failure to timely raise presidential immunity informed her decision not to engage in discovery on whether Defendant's actions fell within his official duties.

In sum, three years passed before Defendant raised the defense of presidential immunity, significant additional resources to conduct

---

[68] *Id.* at 28:57-29:04.

[69] *Id.* at 39:40-40:28.

[70] *Id.* at 39:50-40:05.

[71] *Compare Trump v. Carroll*, 292 A.3d 220, 234 (D.C. 2023) (Westfall Act inquiry's "focus is on the subjective state of mind of the tortfeasor-employee"), *with Nixon*, 457 U.S. at 756 (presidential immunity analysis rejecting "inquiry into the President's motives").

discovery would be required were Defendant to amend his answer, and the request arose at a late stage of litigation—after discovery closed and Defendant moved for summary judgment. Under these circumstances, we hold that the District Court did not "abuse its discretion" in denying Defendant's request for leave to amend his answer on grounds of undue delay and prejudice.

### C. Defendant's Answer to Plaintiff's Amended Complaint

After the District Court denied Defendant's request for leave to amend his answer, Plaintiff filed an amended complaint. In response, Defendant filed an answer to the amended complaint asserting presidential immunity. The District Court struck Defendant's presidential immunity defense from his amended answer, reasoning that "[t]here is nothing new in the amended complaint that would make Mr. Trump's presidential immunity defense any more viable or persuasive now than it would have been before."[72]

We review a district court decision striking an affirmative defense *de novo*.[73] Although "an amended complaint ordinarily supersedes the original, and renders it of no legal effect," an amended complaint "does not automatically revive all of the defenses and objections that a defendant has waived in response to the original

---

[72] August 7 Order, *Carroll I*, 2023 WL 5017230, at *9.

[73] *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

complaint."[74] Defenses that "involve[] the core issue of a party's willingness to submit a dispute to judicial resolution," such as lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service, or the existence of an arbitration agreement, are "not automatically revived by the submission of an amended complaint" if initially waived.[75] To revive such claims, a party "must show that the amended complaint contains charges that, in fairness, should nullify its earlier waiver and allow it to reassess its strategy."[76]

Presidential immunity involves the party's willingness to submit the dispute to judicial resolution and is distinguishable from revivable, merits-based defenses.[77] Indeed, the only reason we have jurisdiction over this appeal is that the denial of presidential immunity is a collateral order, a requirement of which is that the issue on appeal be "completely separate from the merits of the action."[78] What's more,

---

[74] *Id.* (quotation marks omitted).

[75] *Gilmore v. Shearson/Am. Exp. Inc.*, 811 F.2d 108, 112 (2d Cir. 1987), *abrogated in part on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988).

[76] *Id.* at 113.

[77] *See, e.g.*, *Shields*, 25 F.3d at 1128 (failure to plead fraud with particularity is a revivable defense).

[78] *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quotation marks omitted). Defendant suggests that the only non-revivable defenses are those listed in Federal

Defendant does not identify any changes to the complaint "that, in fairness, should nullify [his] earlier waiver and allow [him] to reassess [his] strategy."[79] Accordingly, in the unusual circumstances presented here, we hold that the District Court did not err in striking presidential immunity as an affirmative defense from Defendant's answer to Plaintiff's amended complaint.

## D. Whether the District Court Retained Jurisdiction After Defendant Appealed

"The filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed."[80] We have previously noted that "[t]he divestiture of jurisdiction rule is, however, not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed to avoid confusion or waste of time resulting from having the same issues before two courts at the same time. Hence, its application is guided by

Rule of Civil Procedure 12(b)(2)-(5). Def. Br. at 42; Reply Br. at 27-29. Defendant is mistaken. A motion to compel arbitration, for instance, is non-revivable, even though it is not listed as a defense in Rule 12. *See Gilmore*, 811 F.2d at 112.

[79] *Gilmore*, 811 F.2d at 113.

[80] *Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 113 (2d Cir. 2014) (alteration adopted) (quoting *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996)).

concerns of efficiency and is not automatic."[81] For example, district courts may retain jurisdiction notwithstanding appeal if the appeal is frivolous.[82]

The District Court determined that it retained jurisdiction because Defendant's appeal was frivolous. We need not decide whether Defendant's appeal is frivolous, for we conclude that under the singular circumstances presented here, considerations of judicial economy and efficiency favor the District Court's retention of jurisdiction. To hold otherwise would require the District Court on remand to possibly undertake the rather pointless exercise of re-adopting the orders it has issued since July 19, 2023, the date Defendant appealed the July 7 Order.[83] "[O]ur application of the

---

[81] *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (quotation marks and citations omitted).

[82] *See, e.g.*, *United States v. Salerno*, 868 F.2d 524, 539-40 (2d Cir. 1989); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629 (2009) ("Appellate courts can . . . authorize the district court's retention of jurisdiction when an appeal is certified as frivolous.").

[83] *See United States v. Rodríguez-Rosado*, 909 F.3d 472, 478 (1st Cir. 2018) ("We think applying the bench-made divestiture rule today would surely short-circuit its aim of judicial efficiency . . . . [W]ith jurisdiction back in its hands, the district court, undoubtedly, would again deny [defendant's] motion, like every other time it has confronted—and denied—the motion. And then, chances are that [defendant] would once more appeal his case to us. Which would present to us [another]

divestiture rule must be faithful to the principle of judicial economy from which it springs,"[84] and "it should not be employed to defeat its purposes or to induce endless paper shuffling."[85] This Court has declined to apply the divestiture rule under similar circumstances in the past, and we reach the same result here.[86]

### E.  Whether We May Consider Whether Defendant's Statements Were Defamatory Per Se

Apart from appeals taken under the collateral order doctrine,[87] orders denying summary judgment are, in general, not immediately

---

variation on the original theme of this case, like an encore, featuring the very same parties, the very same motion, the very same denial order, and the very same arguments on the merits. That seems to us too much to ask of a rule fashioned to ferret imprudence out of the courts."); s*ee also United States v. Hickey*, 580 F.3d 922, 927 (9th Cir. 2009) ("[B]ecause [defendant's] interlocutory appeal was ultimately a losing one, any claimed error in proceeding with limited pretrial matters was harmless and no useful purpose would be served by requiring that court to redecide the pre-trial motions." (quotation marks omitted)).

[84] *Rodgers*, 101 F.3d at 251.

[85] 20 MOORE'S FEDERAL PRACTICE - CIVIL § 303.32 (3d ed. 2023).

[86] *See Rodgers*, 101 F.3d at 251-52 (collecting cases).

[87] *See* note 22, *ante* (explaining that we have appellate jurisdiction under the collateral order doctrine to review the District Court's determination that Defendant is not entitled to absolute immunity).

appealable.[88] And collateral-order doctrine appeals—such as Defendant's appeals of the July 5 Order and the August 7 Order—do not render other aspects of the case immediately reviewable unless they are "inextricably intertwined" or "necessary to ensure meaningful review" of the collateral orders.[89]

Defendant argues that none of his statements about Plaintiff were defamatory per se under New York law because they did not tend to cause injury to her trade, business, or profession, and that the District Court applied the wrong legal standard to his statements.[90]

Far from being inextricably intertwined with or necessary to ensure meaningful review of the District Court's denial of presidential immunity, whether Defendant's statements fell within the outer perimeter of his official presidential duties has nothing to do with whether the statements qualify as defamatory per se. Because we have no appellate jurisdiction over the District Court's determination that Defendant's statements were defamatory per se, we do not consider Defendant's argument that the District Court erred in this respect.

---

[88] *See Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 221 (2d Cir. 2023).

[89] *Bolmer v. Oliveira*, 594 F.3d 134, 141 (2d Cir. 2010).

[90] Def. Br. at 56-61.

A33

# III. CONCLUSION

To summarize, we hold that:

(1) Presidential immunity is a waivable defense.

(2) Defendant waived the defense of presidential immunity by failing to raise it as an affirmative defense in his answer.

(3) The District Court did not err in denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense on the ground that he had waived this defense.

(4) Defendant unduly delayed in raising presidential immunity as a defense, and permitting Defendant to amend his answer to add the defense would unduly prejudice Plaintiff. Thus, the District Court did not err, much less "abuse its discretion," in denying Defendant's request for leave to amend his answer to add presidential immunity as a defense.

(5) Presidential immunity is not a defense that is automatically revived by the submission of an amended complaint if initially waived. Thus, the District Court did not err in striking Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint.

(6) Under the singular circumstances presented here, considerations of judicial economy and efficiency favor the District Court's retention of jurisdiction after Defendant's notice

of appeal was filed on July 19, 2023. Thus, the District Court did not err in retaining jurisdiction after July 19, 2023.

(7) Whether Defendant's statements about Plaintiff were defamatory per se is neither inextricably intertwined with nor necessary to ensure meaningful review of the District Court's denial of presidential immunity. Thus, we lack appellate jurisdiction to consider whether Defendant's statements about Plaintiff were defamatory per se.

Accordingly, we **AFFIRM** the July 5, 2023 order of the District Court denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense and denied his request for leave to amend his answer to add presidential immunity as a defense. We likewise **AFFIRM** the District Court's August 7, 2023 order insofar as it struck Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. We **DISMISS** for lack of appellate jurisdiction the appeal of the District Court's July 5, 2023 order insofar as it determined that Defendant's statements about Plaintiff were defamatory per se. Finally, we **REMAND** the case to the District Court for further proceedings consistent with this opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

A35

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of December, two thousand twenty-three,

Before:      José A. Cabranes,
                     Denny Chin,
                     Maria Araújo Kahn,
                           *Circuit Judges.*

---

E. Jean Carroll,

          Plaintiff-Counter-Defendant-Appellee,

v.

Donald J. Trump, in his personal capacity,

          Defendant-Counter-Claimant-Appellant.

**JUDGMENT**

Docket Nos. 23-1045(L),
23-1146(Con)

---

The appeal in the above captioned case from orders of the United States District Court for the Southern District of New York was argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the July 5, 2023 order of the district court is AFFIRMED insofar as it rejected Defendant's presidential immunity defense and denied his request for leave to amend his answer to add presidential immunity as a defense; the district court's August 7, 2023 order is AFFIRMED insofar as it struck Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint; the appeal of the district court's July 5, 2023 order is DISMISSED insofar as it determined that Defendant's statements about Plaintiff were defamatory per se; and the case is REMANDED to the district court for further proceedings consistent with this Court's opinion.

                    For the Court:
                    Catherine O'Hagan Wolfe,
                    Clerk of Court



Case 23-1146, Document 150, 09/13/2023, 3566237, Page 62 of 66

# United States Court of Appeals

FOR THE
SECOND CIRCUIT

_____

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of September, two thousand twenty-three.

Present:
> Reena Raggi,
> Raymond J. Lohier, Jr.,
> Susan L. Carney,
> > *Circuit Judges.*

_____

E. Jean Carroll,

> *Plaintiff-Counter-
> Defendant-Appellee,*

v.                                                          23-1045, 23-1146

Donald J. Trump, in his personal capacity,

> *Defendant-Counter-
> Claimant-Appellant.*

_____

Absent any objection from the parties, the appeals docketed under 23-1045 and 23-1146 will be consolidated seven days from the date of this order.   Appellant moves for a stay pending appeal on both dockets.   Appellee opposes.

The decision to grant a stay pending appeal is "an exercise of judicial discretion" requiring a balancing of four factors: (1) likely success on the merits, (2) irreparable harm, (3) the effect of a stay on the other parties, and (4) a determination of where the public interest lies.   *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).   Upon due consideration of these factors, the parties' submissions, and our own careful and independent review of the record, it is hereby ORDERED that Appellant's motions for a stay pending appeal are DENIED.

Although we do not grant a stay pending appeal, it would be in the interest of the parties, as confirmed during oral argument, for the Court to resolve the issue of absolute presidential immunity as presented in the two appeals expeditiously. Moreover, the parties' extensive briefing thus far makes clear that they have already substantially developed their arguments on the merits of that and related issues. Accordingly, it is further ORDERED that these appeals be expedited. Appellant's brief on the merits will be due 15 days after the entry of this order; Appellee's response brief, 15 days after the filing of Appellant's brief on the merits; and Appellant's reply brief, if any, 5 days after the filing of Appellee's response brief. The appeals will be assigned to the first available panel to hear the cases on the merits.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of December, two thousand twenty-three.

Before:        José A. Cabranes,
               Denny Chin,
               Maria Araújo Kahn,
                        *Circuit Judges.*

_____

E. Jean Carroll,

            Plaintiff-Counter-Defendant-
Appellee,

v.

Donald J. Trump, in his personal capacity,

            Defendant-Counter-Claimant-
Appellant.

_____

**ORDER**

Docket Nos. 23-1045(L), 23-1146(Con)

Appellant moves to stay the issuance of the mandate and to stay district court proceedings during the pendency of remaining appellate proceedings. Appellee moves the Court to issue the mandate on January 5, 2024 and/or enter an order confirming that the district court otherwise maintains jurisdiction to proceed with the case.

IT IS HEREBY ORDERED that the motions are DENIED.

For the Court:

Catherine O'Hagan Wolfe,
Clerk of Court

A39

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 2, 2024, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.


Dated: January 2, 2024                    */s/ Michael T. Madaio*
                                           MICHAEL T. MADAIO

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the word limit requirements in Second Circuit Local Rule 27.1 and Federal Rule of Appellate Procedure 27(d)(2) because this brief contains 3,899 words, excluding those portions pursuant to Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(6) because it was prepared in a proportionally spaced typeface in Microsoft Word utilizing 14-point Times New Roman font.

Dated: January 2, 2024                          */s/ Michael T. Madaio*
                                                 MICHAEL T. MADAIO